# STONE MAGNANINI

## COMPLEX LITIGATION

July 6, 2022

<u>VIA CM/ECF</u>
Hon. Vincent L. Briccetti
United States District Judge
United States Courthouse
300 Quarropas Street, Room 630
White Plains, NY 10601

Re: <u>Hayden v. IBM, et al., Case No. 7:21-cv-02485-VB</u>

Dear Judge Briccetti:

On behalf of Plaintiff Gerald W. Hayden, we write to inform the Court of certain discovery disputes that have arisen between the parties, and to request a pre-motion conference required before submitting a motion to compel Defendants to provide the most pressing discovery that Plaintiff has requested by running a discrete list of search terms in the email of custodians who are known to have relevant information to the allegations in the Amended Complaint.

**<u>Background</u>**

This case alleges theft of trade secrets and intellectual property by one of the most largest global technology companies in the world – IBM – and two leading executives, Shanker Ramamurthy, General Manager of Strategy and Global Development for IBM's Global Business Services, and Pablo Suarez, Vice President and Global Leader for Financial Services Sector Centers of Competence and Digital Banking at IBM. Plaintiff is a 42-year veteran of the global banking industries and financial services who has served in senior positions at Shawmut Bank (now Bank of America), MetLife, Cisco, and Good Technology (now Blackberry). He was also co-author of WebSphere at IBM in the 1990's. Drawing on his expertise in the banking, operations, and technological fields, Plaintiff developed his trade secret -- a novel business analytic and marketing methodology called Awareness to Execution ("A2E"). Plaintiff alleges that Defendants unlawfully incorporated Plaintiff's trade secrets into IBM's Hybrid Cloud platform (https://www.ibm.com/cloud/hybrid) and other products.

The Complaint alleges seven causes of action: a claim for theft of trade secrets under the federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* (Count 1); common law trade secret misappropriation under New York law (Count 2); a breach of contract claim arising from IBM's violation of a confidentiality agreement with Plaintiff (Count 3); breach of the covenant of good faith and fair dealing for Defendants' bad faith conduct towards Plaintiff during his employment (Count 4); unjust enrichment (Count 5); tortious interference with Plaintiff's prospective

Case 7:21-cv-02485-VB   Document 38   Filed 07/06/22   Page 2 of 4

STONE MAGNANINI
COMPLEX LITIGATION

The Hon. Vincent L. Briccetti
July 6, 2022
Page 2

economic advantage to market and trade on his intellectual property (Count 6) and a retaliatory discharge claim under Sarbanes-Oxley, 18 U.S.C. § 1514A for IBM's decision to demote and terminate Plaintiff following Plaintiff's report of suspected securities laws violations by IBM (Count 7).

Given the magnitude of Plaintiff's claims and the breadth of the allegations, Defendants potentially could be liable for damages ranging from $500 million to $3 billion.  If Plaintiff can prove, as is alleged, that Defendants willfully and maliciously misappropriated his trade secret, he would be entitled to an award of exemplary damages in an amount not more than 2 times the amount of the damages awarded as actual damages or royalties; and if the trade secret was willfully and maliciously misappropriated, an award of reasonable attorney's fees to the prevailing party, pursuant to 18 U.S.C. § 1836.

**Defendants' Refusal to Provide Meaningful Discovery**

In response to Plaintiffs' discovery requests, Defendants repeatedly have relied on boilerplate objections, asserting that Plaintiff's requests are "overly broad," "unduly burdensome," and "disproportionate to the needs of the case."  Courts in the Southern District have disapproved of just such boilerplate objections.  *Freydl v. Meringolo*, 09-CV-7196, 2011 U.S. Dist. LEXIS 67742, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011) ("[b]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy while producing no documents … are a paradigm of discovery abuse"); *Leibovitz v. City of N.Y.*, 2017 U.S. Dist. LEXIS 15662, at *4-5 (S.D.N.Y. Feb. 3, 2017) (collecting authorities); *see also 2015 Advisory Committee Notes to Rule 26* (relocation of the proportionality requirement in 2015 amendment is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). Objections of undue burden and lack of proportionality are particularly inappropriate in a case such as this one, in which the potential damages are in the hundreds of millions or billions of dollars. *Fed. Hous. Fin. Agency v. Royal Bank of Scot. Grp. PLC*, No. 3:11CV1383(AWT), 2015 U.S. Dist. LEXIS 196464, at *11 (D. Conn. Aug. 20, 2015) (compelling production of about one million documents over burden objection "in view of the scale of the litigation"); *Solis v. Beacon Assocs. Mgmt. Corp (In re Beacon Assocs. Litig.)*, 2011 U.S. Dist. LEXIS 89353, at *10 (S.D.N.Y. Aug. 10, 2011) (affirming Magistrate Judge's decision that production of "millions of documents" would not "make production unduly burdensome in the context of … [a] large and complex case"); *see Gov't Emples. Ins. Co. v. Strut*, No. 19-CV-728-JLS-HBS, 2021 U.S. Dist. LEXIS 12248, at *7 (W.D.N.Y. Jan. 22, 2021) ("The burden is simply a function of the nature of Plaintiffs' claims[.]").

Relying on these improper, boilerplate objections to unilaterally curtail their discovery obligations, the vast majority of the documents Defendants produced in response to Plaintiff's initial document requests were documents found in Plaintiffs' ***own*** email in-box while employed at IBM (*i.e.*, emails to or from Plaintiff himself).  With respect to Plaintiff's second set of document requests, Defendants have agreed to search for and produce documents responsive to only a handful of the dozens of document requests made by Plaintiff.  Similarly, IBM objected

entirely to the vast majority of Plaintiff's Rule 30(b)(6) Topics, agreeing to designate a witness for just three—and asserted broad objections to one of those three. Indeed, Defendants have refused to provide any discovery concerning the products and services that Plaintiff alleges incorporate his trade secret, information that Plaintiff will need to prove his case and that Plaintiff's experts will need to determine Plaintiff's damages.

**Plaintiff's Efforts to Work In Good Faith to Resolve Defendants' Objections and Plaintiff's Current Application**

Plaintiff has participated in a series of meet and confers with Defendants in an effort to work in good faith to resolve Defendants' numerous objections to Plaintiff's discovery requests. During one of these meet and confers, Defendants' counsel said that they would consider searching for documents from a group of custodians to be proposed by Plaintiff. Although it was ***Defendants'*** obligation to make a good faith effort to look for documents responsive to Plaintiff's requests, Plaintiff agreed to provide the requested list of custodians who are known to have relevant information to the allegations in the Amended Complaint. Plaintiff also wrote to Defendants' counsel explaining the relevance of these custodians to Plaintiff's claims, and proposed a list of search terms. In identifying these custodians and search terms, Plaintiff hoped to be able to narrow or eliminate a number of Plaintiff's discovery requests following a review of the documents produced using the search terms.

However, after having led Plaintiff to believe that Defendants were amenable to using search terms and custodians in order to potentially narrow the discovery disputes between the parties, Defense counsel instead objected to virtually all of the search terms proposed by Plaintiff's counsel and a large number of the custodians. Plaintiff again agreed to meet and confer, and eliminated or narrowed several of the search terms that Defendants indicated would return the largest number of documents, and agreed to drop a number of the custodians. In all, Plaintiff has agreed to the removal or modification of search terms resulting in a reduction of the number of hits generated by 3.3 million documents, as well as the elimination of a total of ten custodians. It is now apparent that Defendants are attempting to "run out the clock" on discovery by refusing to provide key documents and stringing out meet and confers until Plaintiff is in a position where he cannot complete meaningful discovery within the allotted time.

Despite Plaintiff's best good-faith efforts, the parties remain at an impasse, with Defendants still refusing to provide any meaningful discovery. Plaintiff therefore asks for leave to move the Court to order Defendants to run Plaintiff's proposed search terms against the email of the custodians identified by Plaintiff. In the meantime, the parties would meet and confer with regard to the remaining discovery issues in dispute. Depositions would be put off until Defendants produce documents in response to Plaintiff's discovery so that witnesses can be questioned about them.

**STONE & MAGNANINI**
COMPLEX LITIGATION

The Hon. Vincent L. Briccetti
July 6, 2022
Page 4

Respectfully submitted,

STONE & MAGNANINI LLP

By: *s/David S. Stone*
400 Connell Drive, Suite 6200
Berkeley Heights, NJ 07922
Tel: (973) 218-1111
Fax: (973) 218-1106
dstone@smcomplex.com

*Attorneys for Plaintiff*

cc: All counsel of record (via CM/ECF)