# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

Direct Number: (212) 326-3893
syothers@jonesday.com

August 17, 2022

CM/ECF

Hon. Vincent L. Briccetti
United States District Judge
300 Quarropas Street, Room 630
White Plains, NY 10601

Re: Hayden v. International Business Machines Corporation, et al., Case No. 7:21-cv-02485-VB

Dear Judge Briccetti:

      On behalf of Defendants, we write to request the pre-motion conference required before submitting a motion to compel discovery. A pre-motion conference is scheduled for August 25, 2022 (Dkt. 42) on Defendants' request to move for summary judgment (Dkt. 35) and Plaintiff's request to move to compel discovery (Dkt. 38). The parties have continued to meet and confer in an effort to resolve outstanding discovery disputes. As the issues are intertwined with Plaintiff's request to file a motion to compel, Defendants respectfully request a pre-motion conference in order to move to compel sufficient interrogatory responses. As instructed, Defendants will respond to Plaintiff's August 17, 2022 letter motion (Dkt. 47) on or before August 22 (Dkt. 48).

**I.    The Identity of the Alleged Trade Secrets**

      Defendants' Interrogatory No. 1 ("IN1") asked Plaintiff to "[i]dentify and describe all trade secrets You claim relate to A2E and EERT or any other trade secrets You contend Defendants misappropriated." Prior to today, Plaintiff was unwilling to respond to IN1 beyond identifying five documents that he subsequently confirmed in his deposition are the documentation of his trade secrets. Because Plaintiff acknowledged sharing each of these documents without nondisclosure agreements, nothing more is needed for Defendants' planned summary judgment motion. Plaintiff supplemented his response to IN1 earlier today to state that his alleged trade secrets "involve a formula, blueprint and architecture," "anticipate and prevent negative outcomes," "substantially reduce [] costs," "is compatible with Application Programming Interfaces," is "built on," "allows," "is aggregated," etc. Notably, the response does not specify any formula, blueprint or architecture. Nor does it explain how to anticipate, reduce, allow, or aggregate. The supplemental response generalizes the alleged trade secrets, but it never specifies them. Indeed, the response is not even designated as confidential.

      Plaintiff however continues to pursue far-reaching discovery from numerous custodians on numerous products without any explanation of relevance. Defendants have produced many

JONES DAY

Hon. Vincent L. Briccetti
August 17, 2022
Page 2

documents from at least 38 different custodians mentioning A2E, EERT, or Awareness to Execution (various ways in which Plaintiff refers to his alleged trade secrets) and Plaintiff's name. Those documents do not support the claims in Plaintiff's complaint, and therefore Plaintiff seeks more. But unless he further specifies the alleged trade secrets, there is no way for the Court or Defendants to know whether Plaintiff's demands are relevant to any alleged issue in the case. *See Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367, 371–72 (S.D.N.Y. 1974) (holding that until Plaintiff identifies in detail the trade secrets and confidential information alleged to have been misappropriated, "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not").

In a further effort to resolve this issue, Defendants asked Plaintiff in IN12 "[f]or each Document authored by Defendants You contend incorporates Your alleged trade secrets, identify where in each Document You contend the trade secrets appear." Plaintiff's response to date is "Plaintiff contends that *any document written by IBM after Plaintiff was terminated* that deals with integration of bank workflows, cash/balance sheet management in real time, using customer data to create customer-centric platforms, and related services or issues." The terms "integration of bank workflows," "cash/balance sheet management in real time," and "using customer data to create customer-centric workflows" are generic and describe basic tasks banks have performed long before Plaintiff worked at IBM.

Further complicating matters is Plaintiff's refusal to meaningfully respond to IN10, which asked that Plaintiff "[f]or each alleged trade secret You allege was misappropriated by Defendants, identify: the date of conception, the date the trade secret was fully developed, and how Your prior work experience as alleged in paragraph 42 of the Complaint contributed to the development of the trade secret." Given the generic way that Plaintiff describes his alleged trade secrets, these dates are necessary to show that each of these generic concepts was in the public domain prior to Plaintiff's alleged disclosure. Therefore, Defendants respectfully seek leave to submit a motion seeking to compel responses to IN1, IN10 and IN12.

## II.     Any Independent Economic Value of the Alleged Trade Secrets

In order to be a trade secret, the information must derive "independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." To date, Plaintiff has been unwilling to identify any such value. IN17 asked Plaintiff "[f]or each and every trade secret you contend was misappropriated, describe in detail the value of each alleged trade secret, including without limitation the amount of time, effort, and costs of developing each alleged trade secret and the value, actual or potential, from not being generally known to or ascertainable by another person, and identify all documents, knowledgeable persons, and any other evidence relating thereto." Plaintiff's original response

was to "refer[] Defendants to the documents produced in this action and the testimony of Plaintiff at his deposition taken on May 12, 2022."

Additionally, IN9 asked Plaintiff "[f]or each alleged trade secret You allege was misappropriated by Defendants, describe any attempt You have made to license any rights in the trade secret, including without limitation the Person to whom you attempted to license the trade secret and whether that Person agreed to pay You "licensing fees" such as You allege, for example, in paragraph 17 of the Complaint." Plaintiff originally responded that he "has not attempted to license his A2E IP," but that "Plaintiff also entered into a deal with AML Partners to build the platform under that deal. Had it come to fruition, Plaintiff would have received much of the new company's revenue." Even though Plaintiff agreed to produce documents in response to RFP 13 ("Please produce all Documents, Things, and Communications relating to contracts or similar agreements relating to any alleged trade secret that You contend was misappropriated by Defendants.") and RFP 22 ("Please produce all Documents, Things, and Communications relating to any attempt to license any rights in any alleged trade secret Plaintiff contends was misappropriated by Defendants."), Plaintiff has thus far declined to identify the alleged "deal with AML Partners" or to explain any alleged value.

Plaintiff's supplemental response earlier today restated his allegations against Defendants but did not provide the requested information. Defendants therefore respectfully seek leave to submit a motion seeking to compel responses to IN9 and IN17.

### III.    Contention Interrogatories

IN5, IN13-IN15 and IN18 seek Plaintiff's contentions with respect to damages, misappropriation, the identity of each IBM product allegedly incorporating Plaintiff's trade secrets, unjust enrichment, and interference with Plaintiff's economic prospects, respectively. In response to IN15 and IN18 "Plaintiff refers Defendants to the documents produced in this action and the testimony of Plaintiff at his deposition taken on May 12, 2022." Plaintiff's contentions in response to IN5, IN13 and IN14 remain deficient after supplementation.

Additionally, to the extent Plaintiff seeks damages, Defendants sought discovery relating to his duty to mitigate damages, *e.g.*, IN16 asked Plaintiff "[i]dentify each position of employment to which you have applied since your separation from IBM, each position of employment you have held since your separation from IBM, and any employment earnings since your separation from IBM." Plaintiff's response was "Plaintiff refers Defendants to the documents produced in this action and the testimony of Plaintiff at his deposition taken on May 12, 2022." Plaintiff testified in his deposition that he applied for "two- to three hundred" positions, but he has not identified any documents regarding these applications. Defendants respectfully seek leave to submit a motion seeking to compel responses to IN5, IN13-16 and IN18.

JONES DAY

Hon. Vincent L. Briccetti
August 17, 2022
Page 4

                                          Respectfully submitted,

                                          */s/ Stuart W. Yothers*

                                          Stuart W. Yothers

cc:    All counsel of record (via CM/ECF)