# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

Direct Number: (212) 326-3893
syothers@jonesday.com

October 4, 2022

CM/ECF

Hon. Judith C. McCarthy
United States Magistrate Judge
300 Quarropas Street, Room 421
White Plains, NY 10601-4150

Re:  Hayden v. International Business Machines Corporation, et al., Case No. 7:21-cv-02485-VB

Dear Judge McCarthy:

Defendants respond to Plaintiff's September 23 letter (Dkt. 67) seeking wide-ranging discovery into numerous IBM business units and for a multitude of products/offerings. Plaintiff was an IBM consultant for less than three years. His theory – that IBM transformed every corner of its global operations to adopt his alleged trade secrets – is neither credible nor believable. He now seeks detailed technical product specifications (about products and offerings that existed long before he joined IBM) and strategic plans (for business units unrelated to his IBM work). His demands are based on bare assertions with no showing of relevance. Plaintiff pursues this discovery knowing that the only agreement he signed with IBM forecloses his claims. As set forth below, the Federal Rules limit such far-reaching and irrelevant discovery demands.

1. *Plaintiff fails to articulate relevance or proportionality. See* Fed. R. Civ. P. 26, 34; *see also Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC,* No. 18-CV-5393, 2022 WL 1977746, at *3 (S.D.N.Y. June 3, 2022) ("[D]ocument request [must be tailored] so that it requests only relevant information but also so that it is proportional to the needs of the case."). This court rejects overbroad requests not tailored to seek documents including the alleged trade secrets. *See id.* at *2, *4 (rejecting as "wildly overbroad" requests seeking defendant's plans, drafts, proposals, or contract documentation for "any cybersecurity service offered," and

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Hon. Judith C. McCarthy  
August 24, 2022  
Page 2

JONES DAY

similarly rejecting requests for sales, marketing, financial, and contract documents). Further, a discovery request must not be based purely on suspicion or speculation. *See Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002).

Plaintiff seeks solution design, solution architecture and go-to-market documents for "IBM's Hybrid Cloud, RedHat OpenShift, any of IBM's CloudPak products or offerings, Cognitive Enterprise, or Business Process platform." But he must articulate with reasonable particularity how these products, and their components, are relevant to his claims with more than speculation or conjecture. If he cannot, these discovery requests should be rejected. *See, e.g.*, *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012) (without articulating in a "focused, particularized manner" the "characteristics or components" that are relevant to the claims, the discovery request is more likely to be denied); *Tottenham*, 2002 WL 1967023, at *2 ("[D]iscovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

Plaintiff has not met his burden. He was ordered to supplement his response to Int. 12 ("For each Document authored by Defendants You contend incorporates Your alleged trade secrets, identify where in each Document You contend the trade secrets appear"). To date, he has not identified any document in response – even after alleging that IBM "put in the public space a number of the core principles of A2E to entice financial industry customers into seeking out IBM's help in incorporating [A2E] into their own businesses." Dkt. 4 at ¶26. Since July 29, he has had emails from 38 custodians mentioning A2E, EERT or his name. If his technology was widely discussed within, or adopted by, IBM, he would have identified documents showing that.

2. *Plaintiff already has access to product information.* The federal rules and courts in this circuit recognize that discovery requests for publicly-available information should be

Hon. Judith C. McCarthy  
August 24, 2022  
Page 3

**JONES DAY**

rejected. Fed. R. Civ. P. 26(b)(2)(C)(i); *see also S.E.C. v. Strauss*, No. 09 CIV. 4150, 2009 WL 3459204, at *11 (S.D.N.Y. Oct. 28, 2009) (declining to compel access to documents equally available to the requesting party); *Nespresso USA, Inc. v. Williams-Sonoma, Inc.*, No. 119-CV-4223, 2021 WL 942736, at *5 (S.D.N.Y. Mar. 12, 2021) (finding no reason to burden a party with RFPs seeking publicly available documents). Defendants directed Plaintiff to voluminous (searchable, user-friendly, and far better than TIF images) technical documentation regarding the IBM products on which Plaintiff seeks discovery weeks ago and should not be put to the burden and expense of reproducing it. IBM's website allows Plaintiff to first identify his alleged trade secrets in these documents, and to then request more detail only if needed (which is unlikely given that he specified his alleged trade secrets at a general level that does not require detailed design, architecture or go-to-market documents). Indeed, several of the "products" for which Plaintiff seeks information are not products at all.

- *Cognitive Enterprise and Business Process platform*:  These are not mentioned in Plaintiff's interrogatory response allegedly setting forth IBM's misappropriation of his trade secrets. They are not products. The Cognitive Enterprise is a next-generation business model. It is discussed online[A] (superscript letters refer to the Ex. 1 Internet links attached hereto). There is no Business Process platform. The Business Process Manager's documentation is also online.[B] There are no design, architecture or go-to-market documents for Cognitive Enterprise or Business Process platform and other documents are available online.

- *OpenShift* was released on May 4, 2011, long before Plaintiff worked at IBM, and long before IBM acquired Red Hat. IBM does not develop OpenShift nor contribute to it. Red Hat is not a party to this case, and OpenShift is not mentioned anywhere in Plaintiff's FAC or interrogatory responses. If OpenShift were relevant to Plaintiff's claims (it is not), OpenShift is

Hon. Judith C. McCarthy
August 24, 2022
Page 4

JONES DAY

open source and its detailed architecture documents are available on the Internet.$^C$

- *Hybrid Cloud* is not a product. Instead, a hybrid cloud facilitates connecting a public cloud to a private cloud. IBM offered hybrid cloud solutions long before Plaintiff joined IBM.$^D$ Plaintiff admits that his trade secrets are not a hybrid cloud, but rather depend upon hybrid cloud's availability. Ex. 2. Plaintiff's trade secret claims thus do not require discovery of the technical innerworkings of IBM's hybrid cloud solutions. To the extent Plaintiff seeks discovery of IBM's hybrid cloud offerings, detailed documentation is available on the Internet.$^E$

- *Cloud Pak*:  There are many Cloud Pak offerings linked on IBM's website.$^F$ Each provides detailed technical documentation. Cloud Pak for Data is the only Cloud Pak identified in Plaintiff's FAC. Detailed technical information (including features, services, APIs, etc.) is available online and has long been available to Plaintiff. *See*, *e.g.*, Ex. 3.

- Plaintiff also seeks technical documents for "any product utilizing intelligent workflows as defined by IBM . . . for banking, insurance, or healthcare customers." Plaintiff relies upon a February 26, 2021 email provided at the Sept. 15 conference.[1] That email was sent by a former IBM employee who left IBM on December 2, 2020 (and has sued IBM). The email refers to three products launched in November 2017 that remain free for download on Salesforce's AppExchange.$^G$ Plaintiff could have analyzed those products long ago without discovery from IBM. They are unrelated to IBM's intelligent-workflows site[2], which is used to market IBM's service offerings, and which the Internet Archive first logged after Mr. Trinh left the company. Plaintiff has not shown any relevance of the intelligent-workflows site, and in any

---

[1] Plaintiff refers to a large binder submitted at the last discovery conference. Defendants attempt to respond in the five pages permitted here, but request full briefing if the Court is inclined to grant Plaintiff's overly broad requests.
[2] https://www.ibm.com/services/resources/intelligent-workflows/

Hon. Judith C. McCarthy
August 24, 2022
Page 5

JONES DAY

event that site is not a "product" having design, architecture or go-to-market documents.

    3. *The requested Fall Plans are not relevant to Plaintiff's claims.* IBM's Fall Plans are sensitive, strategic documents prepared at a business unit level annually for IBM's CEO. B&FM COC was part of GBS and did not produce Fall Plans. Plaintiff's June and August supplemental interrogatory responses allegedly setting forth how IBM misappropriated his trade secrets do not allege that any of the following incorporate his trade secrets: Bluewolf, IBV, Industry Platforms, and Watson. Plaintiff never worked for IBV. Plaintiff claims to believe IBV published his alleged trade secrets. But IBV's publications are available online.[I] IBM's Industry Platform Unit is no longer operating, but there are detailed online videos about its three years of work.[J] Plaintiff never worked for Watson. Plaintiff seeks Watson plans solely because he met with Tom Eck, but Tom Eck is one of the 38 custodians subject to email discovery. IBM offered hybrid cloud long before Plaintiff worked at IBM, and IBM's website provides detailed documents about its hybrid cloud offerings.[E] And GBS (IBM Consulting) works in many areas other than the financial services consulting Plaintiff performed. In short, Plaintiff should identify some document (from the vast amount of produced and publicly available documents) showing some modicum of relevance to his claims before demanding discovery of any strategic plans. Finally, there is no basis articulated to demand discovery for "any other unit which sells products to the financial services sector." This request is nothing more than a fishing expedition.

    4. *Plaintiff's Other Requests.* The bulk of Plaintiff's "Tab C" demands have been addressed and Defendants were surprised to see those raised in Plaintiff's letter. If the Court will allow it, Defendants provide an update on each of those requests in the attached Exhibit 4.

    Defendants submit that the practical solution is for Plaintiff to first review the public information and the emails from 38 custodians after which he can focus any further requests.

Hon. Judith C. McCarthy  
August 24, 2022  
Page 6

JONES DAY

Respectfully submitted,

*/s/ Stuart W. Yothers*

Stuart W. Yothers

cc: All counsel of record (via CM/ECF)