**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GERALD HAYDEN,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, PABLO SUAREZ and SHANKER RAMAMURTHY,<br><br>    Defendants. | Case No. 7:21-CV-02485-VB |

# PLAINTIFF'S REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF MOTION FOR A PROTECTIVE ORDER

Robert A. Magnanini, Esq.
Julio Gomez, Esq.
**STONE & MAGNANINI LLP**
400 Connell Drive, Suite 6200
Berkeley Heights, NJ 07922
P: 973-218-1111
F: 973-218-1106
rmagnanini@smcomplex.com
jgomez@smcomplex.com

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................................... ii
INTRODUCTION ........................................................................................................................... 1
ARGUMENT .................................................................................................................................. 4
    I.   PLAINTIFF CARRIED HIS BURDEN OF SHOWING PRIVILEGE APPLIES ............ 4
    II.  IBM'S ARGUMENTS THAT PRIVILEGE HAS BEEN WAIVED FAIL ...................... 4
    III. IBM'S ARGUMENTS FOR OVERRIDING WORK PRODUCT FAIL ......................... 7
CONCLUSION .............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
　2014 U.S. Dist. LEXIS 84604 (S.D.N.Y. June 17, 2014) ................................................... 7

*Aviles v. S&P Glob., Inc.*,
　583 F. Supp. 3d 499 (S.D.N.Y. 2022) ................................................................................ 4

*Brunckhorst v. Bischoff*,
　2022 U.S. Dist. LEXIS 125838 (S.D.N.Y. July 15, 2022) ................................................. 6

*Colon v. City of N.Y.*,
　No. 12CV9205 (JMF), 2014 U.S. Dist. LEXIS 92483 (S.D.N.Y. July 8, 2014) ............ 8-9

*Durling v. Papa John's Int'l, Inc.*,
　2018 U.S. Dist. LEXIS 11584 (S.D.N.Y. Jan. 24, 2018) .................................................... 9

*In re County of Erie*,
　546 F.3d 222 (2d Cir. 2008) ................................................................................................ 6

*In re Grand Jury Proc.*,
　219 F.3d 175 (2d Cir. 2000) ................................................................................................ 8

*In re Lifetrade Litig.*,
　No. 17-CV-2987 (JPO)(KHP), 2022 U.S. Dist. LEXIS 152460 (S.D.N.Y. Aug. 24, 2022) ... 6

*In re Steinhardt Partners, L.P.*,
　9 F.3d 230 (2d Cir. 1993) ............................................................................................... 6, 7

*In re UBS AG Secs. Litig.*,
　2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ................ 2

*Johnson v. Bryco Arms*,
　No. 03 CV 2582, 2005 U.S. Dist. LEXIS 48587 (E.D.N.Y. Mar. 1, 2005) ...................... 10

*Merck & Co. v. Reynolds*,
　559 U.S. 633 (2010) ............................................................................................................ 9

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*,
　229 F.R.D. 441 (S.D.N.Y. 2004) ........................................................................................ 7

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
　2023 U.S. Dist. LEXIS 9646 (S.D.N.Y. Jan. 19, 2023) ................................................. 5-6

*Montesa v. Schwartz*,
　2016 U.S. Dist. LEXIS 80822 (S.D.N.Y. June 20, 2016) .......................................... 1, 2, 5

*Nuñez v. Société Générale, S.A.*,
　No. 1:20-cv-851 (MKV), 2023 U.S. Dist. LEXIS 55811 (S.D.N.Y. Mar. 30, 2023) ......... 2

*Oliver v. Am. Express Co.*,
  No. 19-CV-566 (NGG) (SIB), 2022 U.S. Dist. LEXIS 239881 (E.D.N.Y. Nov. 14, 2022) .... 8

*Ricoh Co. v. Aeroflex Inc.*,
  219 F.R.D. 66 (S.D.N.Y. 2003) ............................................................................................. 7

*Schaeffler v. United States*,
  806 F.3d 34 (2d Cir. 2015) ............................................................................................... 1, 5

*SEC v. Genovese*,
  2022 U.S. Dist. LEXIS 166478 (S.D.N.Y. Sep. 9, 2022) ................................................... 10

*SEC v. Gupta*,
  281 F.R.D. 169 (S.D.N.Y. 2012) ......................................................................................... 7

*TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*,
  2022 U.S. Dist. LEXIS 98139 (S.D.N.Y. May 31, 2022) .................................................... 9

*Uni-Systems, LLC v. United States Tennis Ass'n*,
  350 F. Supp. 3d 143 (E.D.N.Y. 2018) ................................................................................. 9

*United States v. James*,
  No. 02 CR 0778 (SJ), 2007 U.S. Dist. LEXIS 39584 (E.D.N.Y. May 31, 2007) ............... 10

*United States v. Krug*,
  868 F.3d 82 (2d Cir. 2017) ................................................................................................... 4

*VR Optics, LLC v. Peloton Interactive, LLC*,
  No. 16-CV-6392 (JPO), 2019 U.S. Dist. LEXIS 82183 (S.D.N.Y. May 15, 2019) ............. 5

**Statutes**

18 U.S.C. § 1836(b)(3)(D) .......................................................................................................... 9
18 U.S.C. § 1836(d) ..................................................................................................................... 9

**Rules**

Fed. R. Civ. P. 26(5)(A) .............................................................................................................. 4
S.D.N.Y. Loc. R. 26.2 .................................................................................................................. 4

**INTRODUCTION**

In the Opening Brief ("Br."), Plaintiff showed that the Court should enter a protective order by setting forth specific evidence that the withheld documents are subject to the attorney client ("AC") or work-product doctrine ("WP") or both.[1] The AC privilege applies since the logged documents reflect "the participants actively soliciting legal advice, from lawyers (and their agents), about legal issues" pertaining to IP theft, contract or employment disputes, or securities/financial misconduct at IBM. Br. 12. This privilege was not waived by the joint legal consultations of the BaaP group (Br. 13-16): As this Court emphasized in *Montesa v. Schwartz* (a case IBM studiously avoids), communications of privileged information will not create waiver when "made in the course of formulating a common legal strategy" and "the communications [were]… in furtherance of the shared legal interest." *Montesa v. Schwartz*, 2016 U.S. Dist. LEXIS 80822, at *62-63 (S.D.N.Y. June 20, 2016); *accord, e.g., Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). "To establish such a common interest, the parties must have come to an agreement, though not necessarily in writing, embodying a cooperative and common enterprise towards an identical strategy…Courts look to whether multiple persons are represented by the same attorney or other evidence of coordination." *Montesa*, 2016 U.S. Dist. LEXIS 80822, at *68 (quotation marks omitted). Here, the relevant parties all retained the same counsel, and have presented unrebutted evidence including their signed retainer agreements and communications with the same counsel of their coordination to hold IBM accountable through a common legal strategy. Br. 6-9.

Additionally, Plaintiff's work product claims protect canonical WP—mostly Plaintiff's strategic thoughts, impressions, outlines, etc., created specifically for litigation, not fact-work

---

[1] Except as indicated, defined terms bear the same meaning as in the opening submission and as in IBM's Opposition brief ("Opp."). For purposes of this brief, "IBM" refers to not just Defendant International Business Machines Corp., but also its co-defendants Pablo Suarez and Shanker Ramamurthy.

product as IBM argues. Br. 17-21. *Montesa* even held that "thoughts on potential litigation" may be withheld "despite the fact that this work product is actually in anticipation of different litigation than the case at bar." 2016 U.S. Dist. LEXIS 80822, at *45.

In its Opposition brief, IBM does not dispute, and thus concede, that (absent waiver) the withheld documents are subject to either attorney-client or work product protection. *Nuñez v. Société Générale, S.A.*, No. 1:20-cv-851 (MKV), 2023 U.S. Dist. LEXIS 55811, at *18 n.8 (S.D.N.Y. Mar. 30, 2023) (party "concede[s] [a] point by failing to dispute it in their opposition brief"); *In re UBS AG Secs. Litig.*, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (party "concedes through silence" arguments by its opponent that it fails to address)). IBM likewise does not dispute, and thus concedes, the facts relied on by Plaintiff to argue that the common interest doctrine applies to prevent waiver.[2] Unable to argue the facts, IBM relies on unsupported legal theories and innuendo to argue waiver, contending that the common interest exception could not have applied to Plaintiff and the BaaP groups's communications with counsel since, supposedly, they didn't share an identical legal interest or ownership in Plaintiff's IP. This novel "privity of estate" theory is just wrong. What matters for the common interest

---

[2] Based on a misstatement or misunderstanding at the March 16 status conference, IBM claims that neither Plaintiff's privilege logs nor his current motion mention 44 documents that he supposedly created between January 2018 and the time he started to consult with counsel, April 2018. Opp. 4. All of the documents IBM refers to are on the log or have been produced—the misunderstanding is in the dates they were created. *See* Log Nos. **2, 5, 7, 29**, 32, **33**, 34, **36**, 37, 38, 39, **40**, 41, **46**, **49**, **51**, **52, 54, 55, 56, 57, 58, 59**, **61**, 62, 63, 64, 66, **67**, 71, **82**, **83**, 674, **1058**, 1117, 1124, 1155, 1156, 1157, 1180 1234, 1249, 1253, 1362, 1395, 1396 (the entries IBM challenges are in **bold**). Plaintiff created just four documents (Nos. **1058**, 1155, 1156, 1157) from January to April 2018; he created the other 40 while consulting with various attorneys before he formally retained counsel in February 2019. Of the first four, three (Log Nos. 1155, 1156 and 1157) were produced under the 502(d) Order (as GH_00027772, GH_00027773, GH_00027778); **1058** has not been produced but it does not deal with Plaintiff's IP claims so it does not bear on IBM's statute of limitations defense. The **bold** entries can be located at Gomez Decl. Ex.3 (hyperlinked spreadsheet).

2

exception is that parties seek legal advice from counsel for a common enterprise, *e.g.*, a legal strategy in common, not that the parties have identical proprietary rights or legal interests. Were it otherwise, IBM and its co-defendants would not be able to safely share counsel (as they do), without a showing that their interests are "identical." IBM's restrictive view of the common interest exception conflicts with controlling precedent, which recognizes that disclosures made to advance a common legal strategy remain protected. IBM further suggests that Plaintiff somehow effected an at-issue waiver by requesting legal advice, but falls far short of making the necessary showing to establish such a waiver.

IBM's opposition to the work-product doctrine also fails since what IBM is really seeking is opinion work product—i.e., Plaintiff's thoughts and impressions of the facts, not the underlying facts. IBM has already gotten the underlying facts—including through a large number of redacted documents (and privilege log of redactions) produced by Plaintiff. IBM thus cannot sustain a request for the production of even fact work product, since IBM cannot show a substantial need for this discovery. IBM cannot plug this gap by citing the DTSA limitation statute's "discovery rule," since the "discovery" that matters under the statute is discovery of facts in the complaint, and IBM has these facts already. IBM also proposes overriding WP based on some future imagined impeachment, but courts have regularly rejected this rationale for eviscerating the privilege.

At root, IBM's effort to dismantle Plaintiff's well-grounded privilege claims fails. With no facts nor law to argue, IBM's Opposition largely consists of pounding the table to overturn settled privilege law. If this Court rules for IBM it would mean that employees could no longer jointly consult one attorney about their employer without running the risk that their communications waived privilege if it turns out their interests are not identical or ultimately only one case is filed for a single employee. That is not the law and this Court should not make it so.

**ARGUMENT**

**I.   PLAINTIFF CARRIED HIS BURDEN OF SHOWING PRIVILEGE APPLIES**

In the Opening Brief, Plaintiff carried his burden of showing privilege applies by setting forth materials including a document-by-document privilege log (Ex. 3-4); declarations; and a detailed recitation of the factual circumstances of (Br. 2-9) and legal basis for (Br. 10-17 (AC privilege), Br. 17-21 (WP), Br. 21-23 (both, for redacted portions)) privilege. *See Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 499, 503 (S.D.N.Y. 2022) ("[T]he party asserting attorney-client privilege or work product protection bears the burden of establishing the privilege's essential elements-that the communications at issue were '(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.'") (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (further quotation omitted)); *see also* Fed. R. Civ. P. 26(5)(A) & Local Civil Rule 26.2 (standards for asserting privilege claims); Br. 9-11 (collecting authority).

In its 25 page Opposition, IBM does almost nothing to address this overwhelming and specific showing. The closest IBM comes is addressing a few documents Plaintiff sent to himself, with no counsel on the email. Opp. 24-25. These documents are AC privileged because they were intended to "facilitate communication" with counsel. Opp. 12 (citing Br. 12 (quoting *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017))). Also, the Court need not reach the issue since the documents are also WP, and IBM hasn't shown substantial need (Part III, *infra*).

IBM does not otherwise dispute Plaintiff's prima facie showing of privilege.

**II.   IBM'S ARGUMENTS THAT PRIVILEGE HAS BEEN WAIVED FAIL**

Unable to dispute Plaintiff's prima facie showing of AC and WP privilege as to any of the hundreds of documents on the logs, IBM instead resists entry of a protective order by arguing

4

waiver. It was Plaintiff's initial burden to prove nonwaiver, given that confidentiality is an element of the AC privilege. *See generally VR Optics, LLC v. Peloton Interactive, LLC*, No. 16-CV-6392 (JPO), 2019 U.S. Dist. LEXIS 82183, at *5 n.2 (S.D.N.Y. May 15, 2019). Plaintiff met this burden by showing the AC documents withheld were maintained in confidence and reflect legal communications about matters of legal strategy between attorneys and their clients. Br. 12-16.

With one exception addressed in the margin, IBM does not dispute the facts giving rise to Plaintiff's argument that the common interest doctrine applies, either. Instead, IBM argues this Court should order that the privilege has been waived categorically since: (i) the common interest doctrine supposedly cannot apply because Hayden asserts sole ownership of A2E, and otherwise has divergent claims from the other members of the BaaP group (Opp. 7-17); (ii) because of a supposed at-issue waiver, or coaching (Opp. 17-19). These arguments fail because all four members have filed and are currently pursuing a joint case against IBM, among other reasons.

IBM's argument against applying the common interest exception to waiver appears to rest entirely on the misapprehension that the doctrine requires some sort of common ownership. *See* Opp. 7-11. This argument fails because the core of the doctrine is not ownership in common, but that the enterprise in common be *legal*—not commercial—such that it makes sense to extend the AC privilege, which protects confidential communications with counsel seeking legal advice. Because IBM does not dispute that the communications withheld were "made in the course of formulating a common legal strategy" and "the communication [were] … in furtherance of the shared legal interest," *Montesa*, 2016 U.S. Dist. LEXIS 80822, at *62-63; *see also Schaeffler*, 806 F.3d at 40, its arguments against application of the doctrine fall flat. *Compare* Opp. 11-5 *with*, *e.g.*, *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2023 U.S. Dist. LEXIS 9646, at *36-37 (S.D.N.Y. Jan. 19, 2023) (collecting authorities distinguishing between common interest that

5

is legal, which may trigger the common interest exception, and common interests which are commercial, which typically won't); *Brunckhorst v. Bischoff*, 2022 U.S. Dist. LEXIS 125838, at *10 (S.D.N.Y. July 15, 2022) (party's cited "cases [pertaining to commercial interests in common] are all distinguishable because here the challenged communications involve legal issues, and therefore fall squarely within the common interest doctrine.").[3]

IBM's other waiver arguments also fail. IBM implies at various points that the Court should conclude there has been an at-issue waiver, but IBM nowhere justifies this result. IBM cites SEC/regulatory cases (Opp. 14, 15, 23) that proscribe the "unilateral testimonial use of work-product materials" (for example, by witnesses making disclosures to regulatory bodies, or by attorney coaching). *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993). Those cases do not apply since IBM has not made any showing of any improper testimonial use of work product. Nor has IBM sustained an argument for at-issue waiver, which generally requires some showing that a party has unfairly benefited from using privileged or work product advice as sword and shield (*e.g.*, by advancing an advice of counsel defense). *See In re County of Erie*, 546 F.3d 222, 229-30 (2d Cir. 2008) (touchstone is whether party was unfairly denied "access to information vital to" their claims).

IBM's waiver arguments are still less convincing when applied to WP. As set forth in the

---

[3] IBM does not point to any contrary precedent. For example, IBM cannot distinguish *Lifetrade* by arguing that the investors in that case had an ownership interest in common (Opp. 12); what was essential in that case was that "all of the investors on the exemplar documents were acting with a common legal purpose insofar as they were all discussing potential claims to recover their investment in the Lifetrade Funds[.]" *In re Lifetrade Litig.*, No. 17-CV-2987 (JPO)(KHP), 2022 U.S. Dist. LEXIS 152460, at *24 (S.D.N.Y. Aug. 24, 2022) (emphasis added). The opinion nowhere states nor implies that ownership in common is a prerequisite for the doctrine to apply, and IBM's apparent requirement that unsophisticated litigants have a detailed knowledge of any claims they may have or not have before seeking a joint legal consultation flies in the face of the core purpose of the AC privilege.

6

Opening Brief, the requirements for showing waiver of WP protection are even more stringent than those applicable to proving waiver of AC privilege. Br. 14 & 14 n.11 (citing *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004)). Thus, the decisive reasons to reject IBM's waiver arguments about AC privilege apply with still greater force to work product. Work product protection is not freely forfeited by disclosure. Br. 14 & n.11 (collecting cases). Voluntary disclosure of a WP document to an adversary waives the privilege—at least for that document. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993). But, the critical consideration for WP waiver is whether the disclosing party reasonably expected that the information would remain shielded from adversaries. *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003). IBM points to no such waiver here. IBM also misplaces reliance (Opp. 14, 15, 23) on cases about attorney coaching of witnesses—as IBM admits, nothing of the sort happened here. *See* Opp. 23 ("*Gupta*, *Subramanian*, and *Alexander Interactive* all concerned communications involving attorneys"); *see also, e.g., Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 U.S. Dist. LEXIS 84604, at *37-38 (S.D.N.Y. June 17, 2014) (counsel emailed third-party witness a draft outline with exhibits, intended questions, and anticipated questions for deposition prep); *SEC v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) (attorney disclosure of WP to non-party witness without common interest for deposition prep (coaching) was deliberate, selective use of WP justifying waiver).

### III.  IBM'S ARGUMENTS FOR OVERRIDING WORK PRODUCT FAIL

The WP documents at issue (Part I, *supra*; Br. 17-20) are opinion work product, since almost all of them are Plaintiff's compilations of theories, strategies, key documents, ideas, etc. about the case. Plaintiff has taken pains to turn over any underlying facts, including by preparing redacted documents and producing a redacted log (Br. 21-23)—a detail IBM omits from its brief.

7

IBM is thus seeking opinion WP, which is generally not discoverable. *See United States v. Doe (In re Grand Jury Proc.)*, 219 F.3d 175, 190 (2d Cir. 2000) (collecting cases). IBM does not even try to argue that opinion work product must be disclosed, and its Opposition on this score should be disregarded for that reason alone.

IBM also fails to show why it is entitled to any factual work product. "[T]he burden of showing substantial need is on the party seeking" disclosure, but IBM nowhere "explain[s] why [it] [has] not already obtained the documents' 'substantial equivalent by other means.'" *Oliver v. Am. Express Co.*, No. 19-CV-566 (NGG) (SIB), 2022 U.S. Dist. LEXIS 239881, at *23 (E.D.N.Y. Nov. 14, 2022) (quoting *SEC v. Collector's Coffee Inc.*, 337 F.R.D. 70, 78 (S.D.N.Y. 2020)). IBM argues with one breath that it needs Plaintiff's work product to prove that the limitations period on Plaintiff's DTSA claim ran (Opp. 18-20) or for impeachment (Opp. 20-22), only to argue against itself in the next breath by asserting that it has ample evidence of the limitations period running (Opp. 18-19), and impeachment material on Plaintiff (Opp. 21 (bulleted evidence supposedly showing Plaintiff is "an unreliable narrator")). Plaintiff disagrees with IBM's summary of this evidence and analysis of its legal effect.[4] Even so, IBM's account can't be squared with the cases IBM cites (Opp. 20) finding there was a substantial need for work product. *Colon v. City of N.Y.*, No. 12-CV-9205 (JMF), 2014 U.S. Dist. LEXIS 92483, at *9 (S.D.N.Y. July 8, 2014) (holding there was a substantial need for section 1983 plaintiff's unfiled affidavits from 1999—which recounted events from 1989 to 1990—since no substantial equivalent existed).

---

[4] For example, IBM mischaracterizes statements in Defs.' Ex. 9; Opp. 21. In fact, if the email is read carefully and represented accurately, it does not support IBM's contention that Plaintiff did not have a claim in A2E. Similarly, IBM mischaracterizes Defs.' Ex. 21 to hint, without any foundation, a conspiracy to tamper with evidence. Opp. 21-22. Yet IBM received this document in discovery and asked Plaintiff about it at his deposition, only to hear his explanation that Plaintiff had been using IBM's slide deck template. That IBM is unhappy with the answer it received does not provide justification to rummage through Plaintiff's work product.

8

IBM can't fill this void by arguing (Opp. 18-20) that it has substantial need of Plaintiff's work product to shore up its limitations defense under the DTSA.. The statute of limitations in question (18 U.S.C. § 1836(d)), like other actual discovery/constructive notice statutes, turns not on the plaintiff's subjective beliefs about the case, but on when a plaintiff discovered/should have discovered the "facts constituting the violation," *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (discussing materially identical limitations provisions in the Exch. Act); *Uni-Systems, LLC v. United States Tennis Ass'n*, 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018) (describing DTSA limitations statute). IBM has already gotten ample discovery of those underlying facts—its supposed limitations defense does not entitle it to even more. IBM likewise misses the mark when it argues (Opp. 20) that the DTSA's prevailing party fee shifting provisions for "bad faith" claims (18 U.S.C. § 1836(b)(3)(D)) somehow support comepelling Plaintiff to disclose work product. Even absent a privilege claim, unsupported assertions of "bad faith" under the DTSA won't support discovery. *E.g., TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.* 2022 U.S. Dist. LEXIS 98139, at *4 (S.D.N.Y. May 31, 2022).[5] They cannot assist IBM in overcoming privilege here.

IBM's argument that WP should be overruled in aid of impeachment (Opp. 21-23) fares no better. IBM cites *Johnson v. Bryco Arms* (Opp. 20) to argue that work product may be disregarded to impeach Plaintiff, but *Johnson* holds that a recalcitrant nonparty witness's

---

[5] *Durling v. Papa John's Int'l, Inc.*, is not to the contrary. In *Durling* the court ordered disclosure because it held that the documents at issue were—unlike the work product at issue here—ordinary business documents. 2018 U.S. Dist. LEXIS 11584, at *20 (S.D.N.Y. Jan. 24, 2018). Also, in *Durling* the party resisting disclosure, PJI, put its good faith at issue (*id*. at *13); here, IBM demands disclosure of work product based on a purported bad faith claim predicated on improper motives concocted by IBM itself. IBM's argument would thus gut the work product doctrine, since defendants can always claim an opposing party acted in bad faith. *See TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, 2022 U.S. Dist. LEXIS 98139, at *4 (S.D.N.Y. May 31, 2022) (evaluating DTSA fee-shifting under same standards as inherent authority sanctions which apply to every litigation).

contemporary factual account was not work product, not that a plaintiff's work product is discoverable in service of impeachment. No. 03 CV 2582, 2005 U.S. Dist. LEXIS 48587, at *15 (E.D.N.Y. Mar. 1, 2005) (holding witness's statement to investigator was "not work product," and that "failure to provide a privilege log constitutes a sufficient independent ground for disclosure of the statement"). Moreover, IBM's "'desire to use [work product] … for impeachment purposes does not by itself constitute substantial need,' particularly because [its] belief that the [work product] contain[s] impeachment material 'rests on mere surmise or suspicion, which is insufficient to overcome work product protection.'" *SEC v. Genovese*, 2022 U.S. Dist. LEXIS 166478, at *5 (S.D.N.Y. Sep. 9, 2022) (quoting *SEC v. Collector's Coffee Inc.*, 337 F.R.D. 70, 79 (S.D.N.Y. 2020) (brackets from *Genovese*)); *accord*, *e.g.*, *United States v. James*, No. 02 CR 0778 (SJ), 2007 U.S. Dist. LEXIS 39584, at *6 (E.D.N.Y. May 31, 2007) ("Defendants' only justification for production of the notes is that they need these documents to impeach [two trial witnesses] … when they testify. While it is 'understandable that [they] seek all possible material that may be of use to impeach [these] important trial witness[es], this desire alone is an insufficient ground for compelled disclosure of this kind of privileged material.'") (quoting *United States v. Jacques Dessange, Inc.*, S2 99 CR. 1182 (DLC), 2000 U.S. Dist. LEXIS 3734, at *11 (S.D.N.Y. Mar. 27, 2000)).

     At bottom, IBM cannot show why it needs WP to prove its case. If IBM wants to ask witnesses about financial deals (*see* Opp. 23); or submit evidence and argument about the statute of limitations; or (if the door has been opened) impeach Plaintiff and other witnesses, it will have ample opportunity to do so—it does not justify subverting privilege.

## CONCLUSION

For the reasons above, and those set forth in the Opening, the Motion should be granted.

Date: April 19, 2023

*/s/ Robert A. Magnanini*
Robert A. Magnanini, Esq.
Julio Gomez, Esq.
**STONE & MAGNANINI LLP**
400 Connell Drive, Suite 6200
Berkeley Heights, NJ 07922
P: 973-218-1111
F: 973-218-1106
rmagnanini@smcomplex.com
jgomez@smcomplex.com