UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GERALD HAYDEN,

                        Plaintiff,

             -against-

INTERNATIONAL BUSINESS MACHINES
CORPORATION, PABLO SUAREZ and SHANKER
RAMAMURTHY,

                    Defendants.
-------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 2485 (VB) (JCM)

Plaintiff Gerald Hayden ("Plaintiff") brought this action against Defendants International Business Machines Corporation ("IBM"), Pablo Suarez and Shanker Ramamurthy (collectively, "Defendants") alleging theft and misappropriation of trade secrets and intellectual property, breach of employment contract and the covenant of good faith and fair dealing, tortious interference and retaliatory discharge, in violation of federal and state law. (Docket No. 4). Presently before the Court is Plaintiff's motion for a protective order, (Docket No. 113), accompanied by a memorandum of law, (Docket No. 114) ("Pl. Mtn."), and a declaration, (Docket No. 113-2). Defendants filed an opposition, (Docket No. 117) ("Def. Opp'n"), accompanied by a declaration, (Docket No. 118), and Plaintiff replied, (Docket No. 121) ("Pl. Reply"). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Relevant Facts[1]

Plaintiff is a financial services consultant who worked for IBM as a Chief Digital Officer in IBM Global Business Services from November 2015 through October 2018. (Docket No. 4 ¶¶ 9, 32, 157).  Plaintiff alleges that he developed A2E, "an advanced business decision-making, analytic, and marketing methodology that takes separate and serial workflows from across an organization's (or many organizations') numerous, siloed departments or divisions, and makes them integrated, simultaneous and real-time customer-level executable." (*Id*. ¶ 40).  In essence, A2E is "a process for reorganizing and restructuring business operations." (*Id*.).  Plaintiff developed A2E throughout his career, completing its development in 2009. (*Id*. ¶¶ 42-43). Plaintiff rejoined[2] IBM in November 2015, at least in part because he felt that IBM "had the potential to generate substantial licensing fees and possible patents from his A2E trade secrets and IP." (*Id*. ¶ 47).  In his motion, Plaintiff claims that he "collaborated" with other IBM employees on proposed banking platforms called Banking as a Platform ("BaaP") and Customer as a Platform ("CaaP"), which incorporated his intellectual property. (Pl. Mtn. at 1). Specifically, IBM employees Steve Cohen, Daniel Gotlieb and Daniel Bingham (collectively, the "BaaP team") collaborated with Plaintiff on the proposed banking platform. (*Id*.).  Plaintiff also claims that two IBM consultants, Boris Kusovski and Yosef Elkaim, "collaborated with" the BaaP team. (*Id*. at 6).  The BaaP team also "worked with AML Partners," a third-party company

---

[1] The facts set forth herein are taken from the Amended Complaint and the parties' briefs.  The Court includes these facts "to provide [] context for the discovery" dispute, and the Court makes "[n]o factual findings with respect to the merits of the litigation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 440, n.1 (S.D.N.Y. 1995).

[2] Plaintiff previously worked at IBM in the 1990s and was a "co-author of WebSphere." (Docket No. 4 ¶ 4).  None of Plaintiff's allegations or claims pertain to his previous period of employment at IBM.

specializing in Anti-Money Laundering and Know Your Customer solutions for the financial

services industry. (*Id*. at 1).  AML Partners' employees Frank Cummings and Jonathan Almeida

worked with the BaaP team to "establish[] a strategic partnership with IBM" and "pitch[]

solutions to potential clients including companies like Equifax, American Express, and Ocean

Bank." (*Id*. at 6).  During his employment, Plaintiff also allegedly discussed A2E with others,

including Defendants Suarez and Ramamurthy. (Docket No. 4 ¶ 15).

Around March 2018, Plaintiff alleges that he and members of the BaaP team began to

"observe potentially fraudulent practices at IBM, including possible contractual fraud (known as

'contract stuffing') and share price manipulation, tax evasion, and misappropriation of"

Plaintiff's intellectual property. (Pl. Mtn. at 6).  The BaaP team reported these concerns to IBM.

(*Id*.).  Certain members of the BaaP team "began to consult attorneys about their many concerns"

about IBM's practices in the spring of 2018. (*Id*.).  Since that time, various groupings of the

BaaP team and others (including Kusovski, Elkaim, Cummings and Almeida) have consulted

attorneys about various legal claims. (*See id*. at 6-9).[3]  Plaintiff retained his current counsel,

"jointly" with Cohen, Gotlieb and Bingham, in July 2020. (*Id*. at 9; Docket No. 113-2 at ¶ 13).

**B.  Procedural History**

Plaintiff filed this suit in March 2021. (Docket No. 1).  After Defendants' requests to file

a motion for summary judgment prior to the close of discovery were denied, this case was

referred to the undersigned for general pre-trial supervision. (Docket No. 50).  After meeting and

conferring over the course of several months, the parties informed this Court of an impasse with

respect to Plaintiff's assertions of attorney-client privilege and work product protection over

---

[3] All communications involving Almeida and Cummings have been produced, (Pl. Mtn. at 9), and are therefore not at issue in this motion.

numerous documents.  The Court directed the parties to continue to try to narrow the scope of the

dispute, and set a briefing schedule for Plaintiff's anticipated motion for a protective order and *in*

*camera* review. *See* Minute Entry Jan. 27, 2023.  Accordingly, on March 24, 2023, Plaintiff filed

the instant motion asserting attorney-client privilege and work product protection over 1,036

documents, and submitted those documents for *in camera* review. (Pl. Mtn. at 4).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides, in relevant part, that "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Moreover, "[a] party or any person from whom discovery is sought may move for a protective

order," which may be issued upon a showing of good cause "to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the

disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).  "[T]he party seeking a protective order has

the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche*

*Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (quoting *In re Agent Orange Prod. Liab. Litig.*, 821

F.2d 139, 145 (2d Cir. 1987)).  The Court has broad discretion "to decide when a protective

order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. DISCUSSION

### A. Relevance

"The burden of demonstrating relevance is on the party seeking discovery.... [and] [o]nce relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (quoting *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011)). The Court has "broad discretion," *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019), and determines relevance "in light of the claims and defenses asserted by the parties," *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 96 (S.D.N.Y. 1993).

Here, it is undisputed that the withheld documents are relevant to the claims and defenses asserted. Therefore, the documents are discoverable, and the Court must determine whether they are shielded from disclosure by privilege or some other protection.

### B. Attorney-Client Privilege

Under the federal rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Excluded, however, are communications protected by the attorney-client privilege. Attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "Where, as here, a case

includes federal and state law claims and the evidence sought is relevant to both, 'the asserted privileges are governed by the principles of federal law.'" *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.,* No. 13 Civ. 8997 (JPO) (GWG), 2015 WL 3450045, at *2 (S.D.N.Y. May 28, 2015) (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)).  Accordingly, the Court applies federal law to decide the issues raised by this motion.

"For the privilege to apply, the communication itself must be 'primarily or predominantly of legal character.'" *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 594 (1989)). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d. 413, 419 (2d Cir. 2007).  Generally, "the presence of a third party counsels against finding that the communication was intended to be, and actually was, kept confidential." *Mejia*, 655 F.3d at 134.  However, courts have extended the attorney-client privilege to communications involving "persons assisting the lawyer in the rendition of legal services" including "office personnel, such as secretaries and law clerks, who assist lawyers in performing their tasks." *In re Grand Jury Subpoenas Dated Mar. 24, 2003*, 265 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (footnotes omitted).  "[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984).  "The party asserting privilege also has the burden to establish that there has been no waiver." *Egiazaryan*, 290 F.R.D. at 428.

Here, Plaintiff has withheld approximately 270 documents solely on the basis of attorney-client privilege. (Pl. Mtn. at 11).[4]  Plaintiff broadly claims that these documents are properly withheld because the underlying communications involved "exploring legal options" or "seeking legal advice," and were made in confidence. (*See id*. at 11-12).  However, "[t]he party invoking a privilege has the burden of proving the facts on which the privilege claim is based, and must do so by competent and specific evidence, rather than by conclusory or *ipse dixit* assertions."  *JSMS Rural LP v. GMG Cap. Partners III, LP*, No. 04 Civ. 8591 (SAS) (MHD), 2006 WL 1520087, at *3 (S.D.N.Y. June 1, 2006).  Based on the Court's *in camera* review of the documents listed on Plaintiff's privilege log, many withheld communications were not made in confidence for the purpose of obtaining legal advice from an attorney—thus rendering the attorney-client privilege inapplicable. *See Sokol v. Wyeth, Inc*., No. 07 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *7 (S.D.N.Y. Aug. 4, 2008) ("[T]he vital element in establishing that the attorney-client privilege applies is that the communication is made in confidence for the purposes of obtaining legal advice from the attorney").  Therefore, the Court outlines certain categories of non-privileged communications that Plaintiff must produce below.[5]

## 1.  Communications sent by Plaintiff, or another non-attorney, to other non-attorneys where an attorney is copied but no legal advice is rendered or sought.

Plaintiff withheld numerous documents where Plaintiff, or another non-attorney, sent summary e-mails regarding certain news events or business developments at IBM, or sharing a

---

[4] Plaintiff withheld an additional 150 documents based on attorney-client privilege and work product protection, (Pl. Mtn. at 17), and withheld portions of other documents due to attorney-client privilege, (*id*. at 22).

[5] The Court has reviewed the over 1,000 documents provided *in camera*.  However, in the interest of judicial economy, the Court does not separately detail its decision on each of the documents.  Instead, the Court sets forth its rulings regarding each category of documents and, where appropriate, provides categorical examples throughout this opinion.  Plaintiff must undertake a careful review of all withheld materials with the Court's rulings and governing principles in mind and produce all documents consistent with the parameters set forth in this Opinion and Order.

personal opinion or predictions regarding the ramifications of the same, and including or copying

an attorney.  (*See, e.g.*, Log Nos. 914, 929, 1102, 1121, 1153, 1160, 1417, 1429).[6]  As a

threshold matter, it is well-established that merely copying a lawyer on a communication does

not render it privileged. *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y.

2019), *aff'd*, 2019 WL 5558081 (S.D.N.Y. Oct. 23, 2019) ("While it is true that Signet in-house

counsel were copied on the emails contained in Exhibit F, that does not make them privileged.");

*see also JSMS Rural LP*, 2006 WL 1520087, at *5 ("At base, defendants appear to contend that

if a document was addressed to, sent by or copied to a lawyer, it is privileged. That is plainly not

the case.").  Moreover, upon review of these communications, the Court finds that their purpose

was not to "interpret[] and appl[y]…legal principles to guide future conduct or to assess past

conduct." *In re County of Erie*, 473 F.3d. at 419.  Accordingly, communications in this category

must be produced.

## 2.  Communications where Plaintiff, or another non-attorney, is forwarding non-privileged communications to recipients, including attorneys.

Plaintiff also withheld as privileged a number of e-mails where Plaintiff, or another non-

attorney, forwarded non-privileged communications.  As an initial matter, to the extent that they

have not been produced, Plaintiff must produce the non-privileged attachments. (*See, e.g.*, Log

Nos. 1147, 1163).  For example, several documents consist of e-mails from Plaintiff, or another

non-attorney, that forwarded podcasts, news articles, or communications regarding the same with

members of the BaaP team. (*See, e.g.*, Log Nos. 892, 930, 1376).  Other e-mails forwarded

communications sent to employees (or former employees) of IBM. (*See, e.g.*, Log Nos. 73, 79,

---

[6] References to "Log No." are to the numbers assigned in Plaintiff's privilege log submitted *in camera* to the Court in connection with the instant motion as Ex. 3.  References to "Redacted Log No." are to Plaintiff's redacted privilege log provided as Ex. 4.

257,[7] 913, 1147).  These communications "merely convey preexisting documents and do not reflect the provision of legal advice." *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989).  Because neither the pre-existing document nor the transmittal communications contain confidential communications regarding legal advice, they are not covered by the attorney-client privilege. *Id*.; *see also Sokol*, 2008 WL 3166662, at *9 (ordering disclosure of "any communication consisting of the text 'FYI,' or a similar announcement indicating that a [non-privileged] document is being forwarded with or included in that communication" and noting such privilege assertions were "frivolous").  Plaintiff must produce all documents falling within this category.

### 3. Retainer agreements and related non-privileged communications.

Plaintiff withheld numerous communications forwarding retainer agreements. (Log Nos. 1091, 1095, 1096, 1097, 1104, 1387).  "[A] long and unbroken line of cases in this Circuit have established that 'in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice.'" *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 322 (E.D.N.Y. 2012) (quoting *Vingelli v. United States*, 992 F.2d 449, 452 (2d Cir. 1993)); *see also Allen v. W. Point-Pepperell Inc*., 848 F. Supp. 423, 431 (S.D.N.Y. 1994) (finding terms of retainer agreement not privileged); *Duttle*, 127 F.R.D. at 52 ("Attorneys' bills and communications regarding retainer agreements are not privileged.").  Additionally, for the same reasons, courts have found that communications concerning the termination of the retainer

---

[7] Plaintiff may redact the last sentence of Plaintiff's April 20, 2018, at 5:34 a.m. e-mail to Phillip Brown, his attorney, and Daniel Bingham's response that same date, because Plaintiff is seeking legal advice regarding his whistleblower complaint.

agreement are not privileged. *Id.* (ordering disclosure of communications regarding "the termination of the attorney-client relation").

Accordingly, Plaintiff must produce the retainer agreements if he has not done so already. Moreover, to the extent that the transmittal e-mails do not reflect the provision of legal advice, Plaintiff must produce those accompanying communications. (*See, e.g.*, Log Nos. 1091, 1095). *Cf. In re Lifetrade Litig.*, 17-CV-2987 (JPO) (KHP), 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022) (attorney-client privilege only attaches to communications regarding terms of engagement "to the extent the communications about engagement also reflect the motive for seeking counsel, litigation strategy or specific legal advice sought"). Plaintiff must also produce communications concerning the termination of the retainer agreements, (*see, e.g.*, Log Nos. 1244-45), or communications post-termination of the attorney-client relationship that do not concern the provision of specific legal advice, reveal legal strategy, or reflect the motive for seeking counsel, (*see, e.g.*, Log No. 941).

**4. E-mails where a government investigator, or other third party for which no common interest protection is claimed, was included in the communication.[8]**

Plaintiff also withheld certain communications as privileged where a third party, other than those which he claims are protected by the common interest doctrine, are copied on communications with counsel. For example, in connection with Plaintiff and others' OSHA complaints, they communicated with government investigators. The inclusion of such third parties on the communications waives privilege. *See, e.g., In re Lifetrade Litig.*, 2022 WL 3644357, at *2. Moreover, Plaintiff, who bears the burden of establishing that the privilege

---

[8] While Plaintiff represents that "all communications with government agencies on Plaintiff's privilege log were produced," (Pl. Mtn. at 3), the exemplar log entry cited appears on Plaintiff's challenged (and not redacted) privilege log entries (provided to the Court as Ex. 3). Therefore, it appears that this e-mail chain was withheld entirely, rather than produced in redacted form. For the avoidance of doubt, the Court includes its reasoning as to why this category of communications must be produced.

applies, has set forth no arguments as to why the inclusion of such actors on e-mails including counsel would not constitute waiver. Therefore, Plaintiff must produce communications where third parties were included in the communication, (*see, e.*g., Log No. 516).[9] *See In re Vitamin C Antitrust Litig.*, No. MD 06-1738 (BMC) (JO), 2011 WL 197583, at *4 (E.D.N.Y. Jan. 20, 2011) (party waived work product protection by disclosing material to government agency).

**5.  Plaintiff's standalone documents for which he claims attorney-privilege.**

Plaintiff withheld numerous documents, either entirely or in part, that are authored solely by Plaintiff on the basis of attorney-client privilege. (*See, e.g.*, Log Nos. 1-3, 5, 7-8, 17; Redacted Log Nos. 165-66).[10] These documents are standalone documents, *i.e.*, documents that are not appended to e-mails. The documents contain Plaintiff's personal opinions or summaries of news or events, or summaries of facts or evidence he considered relevant to his various claims. Plaintiff claims that these documents "fall within the four corners of the [attorney-client] privilege" because they "reflect statements by Plaintiff…to procure legal advice." (Pl. Mtn. at

---

[9] Plaintiff may redact the top portion (May 6, 2020, at 7:46 p.m.) of the e-mail chain only, which is from Plaintiff's counsel, and clearly sets forth legal principles "to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d. at 419.

[10] Plaintiff only lists Redacted Log Nos. 172 and 188-93 as redacted documents in dispute that "have redactions of an actual attorney-client communication." (Pl. Mtn. at 22). However, based on the Court's review, Plaintiff also redacted portions of Redacted Log Nos. 165-68, 173-75, 186-87, and 193 based on attorney-client privilege. Plaintiff has thus failed to present any arguments that these communications are privileged. The Court finds that Redacted Log Nos. 165-66, which are standalone Plaintiff documents, are not privileged and must be produced for the reasons set forth herein, *i.e.*, there is no evidence that Plaintiff's notes were communicated to counsel. Redacted Log Nos. 167-68, 173-75, and 186-87 were not included in the documents provided to the Court for *in camera* review (although they are listed on the Redacted Log as in dispute). According to Plaintiff's log, Redacted Log No. 173 was produced in full. The entries for Redacted Log Nos. 167-68, 174-75 and 186-87 involve attorneys and are claimed to involve legal advice. Plaintiff should re-review these communications and confirm that they are, in fact, privileged within the confines of this decision.

16).  Defendants counter that the attorney-client privilege does not "shield[] notes [Plaintiff] prepared for his own use and never sent to his attorneys." (Def. Opp'n at 24).  The Court agrees.

The Second Circuit has held that a party's personal notes may be privileged if "the notes *were communicated* by the client to the attorney." *United States v. DeFonte*, 441 F.3d 92, 95 (2d Cir. 2006) (emphasis added).  The Circuit reasoned that "[a] rule that allows no privilege at all for such records would discourage clients from taking the reasonable step of preparing an outline to assist in a conversation with their attorney." *Id*. at 96.  However, the Court flatly rejected "[a] rule that recognizes a privilege for any writing made with an eye toward legal representation" as "too broad." *Id.*  In order to establish that the privilege applies, Plaintiff must present evidence that the content of his notes served as a basis for a conversation with counsel, or that the content of the notes was communicated to counsel. *See Graves v. Deutsche Bank Sec., Inc*., No. 07 Civ. 05471 (BSJ) (KNF), 2011 WL 721558, at *2 (S.D.N.Y. Feb. 10, 2011), *aff'd*, 2011 WL 6057554 (S.D.N.Y. Dec. 5, 2011).

Here, Defendants agree that Plaintiff properly withheld certain documents to the extent that they are, in fact, "draft attorney client communication[s] requesting legal advice." (Def. Opp'n at 25, n.9) (citing Log Nos. 17, 21-26, 28 and 31).  The Court has reviewed this set of communications and finds that, on its face, only Log No. 21 was clearly communicated to an attorney for the purpose of seeking legal advice.  *See Gen. Elec. Co. v. United States*, No. 3:14-cv-00190 (JAM), 2015 WL 5443479, at *3 (D. Conn. Sept. 15, 2015) ("In keeping with the purpose of the attorney-client privilege, the guiding rule for documents that have not themselves been communicated between privileged persons is whether the document reflects the substance of a communication that would otherwise be privileged.").  Log Nos. 17 and 22-26 appear to have been draft communications or notes for OSHA investigators, with whom Plaintiff shared no

attorney-client relationship.  Log No. 28 does not even appear to have been authored by Plaintiff, as it repeatedly refers to Plaintiff in the third person.  Moreover, it is unclear if these notes were ever communicated to an attorney, and Plaintiff has not produced any evidence that they were. Accordingly, because Plaintiff has not presented evidence that these documents were communicated to counsel, they must be produced. *See Graves,* 2011 WL 721558, at *2.

Similarly, as to the remainder of the entries in this category, "[n]othing in the record [before this Court] indicates that the content of the plaintiff's …notes served as a basis for any conversation that the plaintiff might have had with counsel he was attempting to engage or that he actually engaged, or that the content of his notes was orally communicated or discussed with his counsel." *Id*.  For example, Plaintiff has not submitted a declaration "describ[ing] how he created and communicated the Notes to his attorneys 'in the strictest of confidence' and believed that the Notes would not be subject to any future disclosure." *Clark v. Buffalo Wire Works Co*., 190 F.R.D. 93, 96 (W.D.N.Y. 1999); *see also Matter of Search of Info. Associated with Two Accts. Stored at Premises Controlled by Google LLC*, Case No. 22-GJ-28, 2022 WL 18673695, at *6 (D.D.C. Sept. 27, 2022) (finding attorney-client privilege did not apply to party's notes where party "never argue[d] before this Court—let alone provide[d] any sworn declaration—that the outline was *in fact* created to guide a conversation with counsel, or at the request of counsel," or that the party "shared the outline with counsel").  In the absence of such information, Plaintiff has not fulfilled his burden of establishing the first element of the attorney-client privilege. Accordingly, these documents must be produced, unless work product protection applies (for documents for which he asserts both) and disclosure is not warranted by substantial need.

In sum, Plaintiff must produce all documents that fall outside the scope of the attorney-client privilege, for the reasons outlined above.  To the extent that certain communications

include both privileged and non-privileged content, Plaintiff must produce the documents in part, with the non-privileged information unredacted.  The Court next turns to Plaintiff's arguments regarding the common interest doctrine for the documents that *are* subject to the attorney-client privilege, but were disclosed to third parties. *See Sokol,* 2008 WL 3166662, at *5 ("If a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply.").

## C. Common Interest Doctrine

Many of the communications on Plaintiff's privilege logs were shared with third parties. "As a general rule, the privilege is waived if the holder of the privilege discloses or consents to disclosure of the privileged communication to a third party." *In re Lifetrade Litig.*, 2022 WL 3644357, at *2.  Plaintiff maintains that he did not waive the privilege for the withheld documents because these documents were created "during a time when [Plaintiff], as well as the other members of the BaaP Group—and, in particular, core members [Plaintiff], Gotlieb, Cohen, and Bingham—were exploring legal options, and seeking legal advice, about legal issues adverse to IBM." (Pl. Mtn. at 11-12).  Plaintiff contends that the BaaP team and other IBM employees or collaborators were engaged in a "common legal enterprise" with Plaintiff and, therefore, attorney-client privilege was not waived when these individuals were included on communications with lawyers. (*Id*. at 13-16).  Defendants counter that Plaintiff waived privilege over the withheld documents because he does not share a common legal interest with the BaaP team or other IBM employees or collaborators. (Def. Opp'n at 5-7).  Specifically, Defendants argue that: (i) "Hayden's own allegations expressly disclaim any common legal interest in his trade secrets claims;" and (ii) any personal knowledge that Hayden and other IBM employees

had of other legal claims is insufficient to establish that they "ever shared a common legal interest with respect to any of" those claims. (*Id*. at 7-11).

The common interest doctrine "is not an independent source of privilege or confidentiality." *Sokol,* 2008 WL 3166662, at *5 (quoting *In re Com. Money Ctr., Inc., Equip. Lease Litig*., 248 F.R.D. 532, 536 (N.D. Ohio 2008)). Rather, the doctrine, "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). In order to receive protection under the common interest doctrine, the moving party must make a two-part showing. *Fireman's Fund Ins. Co.*, 284 F.R.D at 139. First, "the parties exchanging otherwise privileged information must establish a common legal, rather than commercial, interest," which courts have found embodied in "a cooperative and common enterprise towards an identical legal strategy." *Id*. (quotation marks and citations omitted). Second, "the parties must establish that any exchange of privileged information was 'made in the course of formulating a common legal strategy[,]' and that the parties understood that the communication would be in furtherance of the shared legal interest." *Id*. at 140 (citing *Sokol*, 2008 WL 3166662, at *5, 7).

## 1.  Relevant Facts

Because Plaintiff's arguments concern numerous sets of attorneys, colleagues, business partners, and legal claims over a multi-year timespan, the Court will briefly summarize Plaintiff's efforts to secure representation, and the scope thereof, based on the documentation submitted. Beginning in April 2018, Plaintiff's IBM colleagues began to approach various law firms about allegedly fraudulent activity they observed while working at IBM. (Log Nos. 73, 79). Around December 2018, Plaintiff began to spearhead the efforts to secure representation on

behalf of himself and the BaaP team. (Log Nos. 686-87, 1361).  In December 2018, Hoyer Law Group agreed to represent Plaintiff and another BaaP team member in connection with the filing of an SEC whistleblower complaint regarding the allegedly fraudulent activity. (Log No. 687). During that same month, Plaintiff e-mailed Holwell Shuster & Goldberg LLP ("HSG") regarding alleged fraudulent "contract stuffing" and cover-up activities at IBM. (Log No. 686).  The BaaP team was included in these communications, and eventually jointly retained HSG in early 2019 to prosecute an SEC whistleblower claim, investigate certain employment-related matters (*i.e.*, individual OSHA complaints that had been, or were soon to be, filed), and investigate potential claims under the False Claims Act. (Log No. 1277).  Throughout 2019 and early 2020, Plaintiff and the BaaP team continued to discuss their SEC whistleblower claims with HSG and, periodically, provided updates on their individually-filed OSHA complaints to HSG. (*See, e.g.*, Log Nos. 646, 866-67).  At times, Plaintiff broached the topic of pursuing his personal IP theft claim. (Log Nos. 525, 899).

In late 2019 and early 2020, Plaintiff and the BaaP team began to look for different representation regarding their SEC whistleblower claims. (Log Nos. 1065, 1090).  In early 2020, Plaintiff and the BaaP team retained lawyers that had already been separately retained by former IBM colleagues, Elkaim and Kusovski. (Log Nos. 451, 648, 1096).  The purpose of this joint representation was to pursue the SEC whistleblower claims and individually-filed OSHA complaints; Plaintiff's IP litigation was expressly not included. (Log No. 451).  Throughout this joint representation, Plaintiff or others continued to periodically reference the theft of his IP in e-mails, (Log No. 1119), including the possibility of retaining counsel to pursue that claim, (Log Nos. 498, 525).  Plaintiff and the BaaP team's relationship with HSG formally ended in May 2020, (Log Nos. 1244-45), and they continued to contact attorneys throughout the late spring and

early summer of 2020 to take their SEC whistleblower claims, and individually-filed OSHA complaints, (Log Nos. 1070, 1227).

## 2. Application

Here, the Court finds that Plaintiff's assertions of the common interest doctrine are overbroad and inapplicable in certain instances. In order for the common interest doctrine to apply, the parties must "identify a common legal interest or strategy in obtaining a particular legal goal whether or not litigation is ongoing." *Schaeffler v. United States*, 806 F.3d 34, 42 (2d Cir. 2015). "Although the distinction between a common legal, as opposed to commercial, interest is somewhat murky, a common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation, or have formed a coordinated legal strategy." *Obeid v. Mack*, 14 Civ. 6498 (LTS) (HBP), 2016 WL 7176653, at *3 (S.D.N.Y. Dec. 9, 2016) (quoting *In re Subpoena Duces Tecum Served on N.Y. Marine & Gen. Ins. Co*., M 8-85 (MHD), 1997 WL 599399, at *4 (S.D.N.Y. Sept. 26, 1997)).

The communications reviewed *in camera* demonstrate that Plaintiff and the BaaP team (Cohen, Bingham, and Gotlieb) shared a common legal interest regarding their SEC whistleblower claims, OSHA complaints, and False Claims Act claims beginning in March 2018. "At its core, '[t]he 'common interest' doctrine applies when multiple persons are represented by the same attorney. In that situation, communications made to the shared attorney to establish a [legal] strategy remain privileged as to the rest of the world.'" *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) (quoting *N. River Ins. Co. v. Philadelphia Reinsurance Corp*., 797 F. Supp. 363, 366 (D.N.J. 1992)). Plaintiff and the BaaP team sought to, and did, secure legal representation regarding their SEC whistleblower, OSHA, and False Claims Act claims. The communications with their attorneys evince a desire to

formulate a common legal strategy with respect to these claims.  Accordingly, Plaintiff may

withhold communications, made in confidence, amongst the BaaP team and their counsel

concerning the SEC whistleblower, OSHA, and False Claims Act claims from March 2018 to the

present.

For similar reasons, Plaintiff and the BaaP team shared a common legal interest with

Kusovski and Elkaim beginning in January 2020—when they retained joint counsel to pursue

their SEC whistleblower and OSHA claims, and to investigate False Claims Act claims. (Log

Nos. 447, 486, 1283, 1285).  The documents reviewed *in camera* do not demonstrate an effort to

coordinate a joint legal strategy regarding these claims prior to this time, and Plaintiff has not

made a contrary showing.  Accordingly, Plaintiff must produce any communications where

Kusovski and Elkaim were copied or included prior to January 2020 regarding SEC

whistleblower, OSHA, and False Claims Act claims.

As to the remaining claims, including claims arising under unnamed Federal Trade

Commission laws, the Sarbanes Oxley Act and IRS regulations, the Court does not find that

Plaintiff shared a common interest with the third parties.  As an initial matter, Plaintiff has not

explained what these legal claims entailed, or what the common legal interest was.  "The

common interest rule does not apply merely because two parties share the same attorney or

because one party has an interest in a litigation involving another party." *Egiazaryan*, 290 F.R.D.

at 434.  "Rather '[t]here must be a substantial showing by parties attempting to invoke the

protections of the privilege of the need for a common defense as opposed to the mere existence

of a common problem.'" *Id*. (quoting *Finkelman v. Klaus*, 2007 WL 4303538, at *4 (N.Y. Sup.

Ct. Nov. 28, 2007)).  Moreover, the documents do not reveal the formulation of a coordinated, or

even a cohesive, legal strategy regarding these claims.  Accordingly, because communications

regarding these claims were not "made in the course of formulating a common legal strategy," *Fireman's Fund Ins. Co.*, 284 F.R.D. at 140, "the common interest exception is inapplicable…[and] whatever attorney-client privilege that would otherwise have attached to these e-mails was waived." *Egiazaryan*, 290 F.R.D. at 435.

In addition, the communications do not demonstrate a common legal strategy with respect to Plaintiff's personal IP theft claim.  While, at times, Plaintiff mentioned his IP theft in e-mail chains with the relevant non-parties' jointly retained counsel, (*see, e.g.*, Log Nos. 498, 1119), the scope of counsel's engagement did not cover such claims.  Plaintiff fails to explain, even generally, the common legal goal that the various parties held with respect to his personal IP theft claim.  Moreover, even assuming, *arguendo*, that Plaintiff did meet the burden of establishing a common legal interest, the substance of the communications does not demonstrate a coordinated legal strategy was developed with respect to Plaintiff's individual IP claim. Merely expressing a concern about potential litigation is insufficient where there is otherwise "no evidence that they formulated a joint legal strategy to deal with the possibility." *Bank Brussels Lambert*, 160 F.R.D. at 448.  "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *N. River Ins. Co. v. Columbia Cas. Co.*, No. 90 Civ. 2518 (MJL), 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995).  Indeed, many of the communications evince a desire to secure *separate* counsel to pursue his IP theft claim. (*See, e.g.*, Log Nos. 498, 525).  And to the extent that Plaintiff argues that he shared an interest in his IP claim because he collaborated with others on product solutions that incorporated his IP during his employment at IBM, that is a commercial interest that is plainly not covered by the common interest doctrine. *Bank Brussels Lambert*, 160 F.R.D. at 447 (holding that "the common interest doctrine does not encompass a joint business

strategy which happens to include as one of its elements a concern about litigation"). "Privileges should be narrowly construed and expansions cautiously extended." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir.1999). Consequently, Plaintiff has waived privilege over withheld communications when he included third parties with which he shares no common legal interest, such as Cohen, Gotlieb, Bingham, Elkaim, and Kusovski. Accordingly, withheld communications regarding Federal Trade Commission laws, the Sarbanes Oxley Act, IRS regulations, and Plaintiff's IP theft claim where third parties are copied must be produced.[11]

## D. Work Product Doctrine

"'[F]ederal law governs the applicability of the work product doctrine in all actions in federal court.'" *Fresh Del Monte Produce, Inc.*, 2015 WL 3450045, at *2 (quoting *Weber v. Paduano*, No. 02 Civ. 3392 (GEL), 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003)). The work product doctrine is based on "strong public policy" and is codified in part by Federal Rule of Civil Procedure 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative" unless the party shows substantial need and an inability to obtain the substantial equivalent of the documents without undue hardship. *United States v. Adlman* ("*Adlman II*"), 134 F.3d 1194, 1197 (2d Cir. 1998). It "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Id*. at 1196 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). "'[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was

---

[11] To the extent that communications discuss claims for which the Court has found an applicable common interest privilege, but also discuss Plaintiff's IP theft, Plaintiff may redact the portions that are privileged.

prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'" *Allied Irish Banks v. Bank of Am., N.A*., 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc*., No. 97 Civ. 4978 (LMM) (HBP), 2002 WL 31556382, at *4 (S.D.N.Y. Nov.15, 2002)).

*Adlman II* established a test to determine whether documents should be deemed prepared "in anticipation of litigation" and therefore subject to work product protection.  "A document will be protected if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Schaeffler*, 806 F.3d at 43 (quoting *Adlman II*, 134 F.3d at 1202). "Conversely, protection will be withheld from 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.'" *Id.*

Plaintiff claims that 530 entries should be withheld because they are protected work product. (Pl. Mtn. at 17-21).  While the vast majority of the materials withheld on work product grounds are Plaintiff's standalone documents, (*see id*. at 18 n.14), Plaintiff also withholds some "short videos made by Plaintiff to facilitate legal advice and record his impressions and potential theories about ongoing litigation," (*see id*. at 18 n.15), and materials authored by third parties, or whose authorship is indeterminate, (Pl. Mtn. at 19).  Plaintiff states that "[n]early all of the documents withheld solely for work product consist of Hayden's writing or other material made because of, and to assist with, anticipated or actual litigation." (*Id*. at 18).  Defendants counter that they have a substantial need for Plaintiff's fact work product, Plaintiff has waived any work product protection by disclosing the withheld materials to third parties, and, in any event, a

party's notes and collections of evidence are not generally afforded work product protection. (Def. Opp'n at 23-24).

The Court rejects Plaintiff's blanket assertion that his personal notes qualify as "opinion work product" and are thus entitled to a greater level of protection. (*See* Pl. Reply at 3, 7).  In analyzing assertions of work product protection, "courts distinguish between factual and opinion work product." *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 227 (E.D.N.Y. 2019).  Opinion work product are "documents that tend[ ] to reveal the attorney's mental process." *Adlman II*, 134 F.3d at 1197 (citation and quotation omitted); *see also Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (opinion work product "comprises the attorney's opinions, judgments and thought processes"); *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-84 (2d Cir. 2007) ("To be entitled to protection for opinion work product, the party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation.") (citations and quotations omitted).  Plaintiff presents no evidence that his standalone documents comprise his attorney's work product.  In fact, Plaintiff argues that the documents "compil[e] facts *about his view* of alleged misconduct and improprieties at IBM." (Pl. Mtn. at 18) (emphasis added).  Nor does Plaintiff present any legal support extending the "higher" or "special" protection afforded to opinion work product to such documents. *See Adlman II*, 134 F.3d at 1197 (opinion work product "receive[s] special protection not accorded to factual material"); *Strougo*, 199 F.R.D. at 521 ("Opinion work product receives higher protection so that litigation strategy is not revealed").  Therefore, the withheld materials are, if anything, "'non-opinion work product,' containing non-privileged facts," and may be obtained upon a showing of substantial need. *Id.*; *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *8

(S.D.N.Y. Jan. 24, 2018) ("Based on its *in camera* review, the Court finds that the communications between PJI and Motus at issue are not opinion work product because they contain factual material, not attorney mental impressions or legal theories.").

The Court first addresses the "standalone materials" created by Plaintiff. "As a party to this action[,] Plaintiff …is [] entitled to create work product deserving of protection under Rule 26(b)(3)(A)." *Montesa v. Schwartz*, 12 Civ. 6057 (CS) (JCM), 2016 WL 3476431, at *9 (S.D.N.Y. June 20, 2016). This protection can extend to work product created "in anticipation of different litigation than the case at bar." *Id*. As previously stated, the documents reviewed *in camera* demonstrate that Plaintiff, and other IBM employees, began to discuss the retention of counsel regarding purportedly fraudulent activity in April 2018. The earliest document in this category is dated April 2018, and discusses the factual underpinnings of those claims. Other documents contain similar chronologies, (*see, e.g*., Log No. 3; Redacted Log No. 2). Upon consideration of the substance and timing of these communications, the Court finds that these documents "can fairly be said to have been prepared or obtained because of the prospect of litigation" of the non-IP claims. *Adlman II*, 134 F.3d at 1202; *see also Cohen v. City of New York*. 255 F.R.D. 110, 124 (S.D.N.Y. 2008) (finding that "the weight of authority now clearly favors protecting work product that was generated as part of an earlier litigation at least where, as here, that litigation is related to the current suit"). However, Plaintiff must disclose standalone documents that were not prepared for litigation. (*See, e.g*., Log No. 48).

As to Plaintiff's IP theft claim, the documents demonstrate that the threat of litigation became real in September 2018—shortly before Plaintiff's employment with IBM ended. "It is not enough that a document is created after the threat of litigation becomes real, but it is also necessary that the motivation for creating that document be the litigation." *In re Grand Jury*

*Proc.*, No. M-11-189, 2001 WL 1167497, at *14 (S.D.N.Y. Oct. 3, 2001).  While Plaintiff may

have expressed concern about IP theft generally (whether his own or other's) prior to this time,

the work product doctrine "'requires a more immediate showing than the remote possibility of

litigation[,]'" meaning that "'litigation must at least be a real possibility at the time of

preparation[.]'" *Montesa*, 2016 WL 3476431, at *8 (quoting *Occidental Chem. Corp. v. OHM

Remediation Servs. Corp.*, 175 F.R.D. 431, 434 (W.D.N.Y. 1997)).  In other words, "[t]he

document at issue must have been 'prepared with an eye to some *specific* litigation.'" *Id.*

(emphasis added) (citation omitted).  The documents examined were clearly authored with an

eye toward litigation beginning in September 2018, and would not have been created in the same

form irrespective of litigation. *See Lapaix v. City of New York*, No. 13-CV-07306 (LGS) (SN),

2014 WL 11343854, at *4 (S.D.N.Y. Aug. 15, 2014) (finding "legal narratives" written by party

"within a sufficient range of the core of the work product doctrine" where they were "purely

litigation-oriented" and "reflect[ed] [the plaintiff's] evolving case strategy and goals in bringing

a lawsuit against the defendants, all of whom he accuses of misconduct in the earliest legal

narrative draft").  Accordingly, Plaintiff must disclose standalone documents generally regarding

IP theft prior to September 2018.[12]

Plaintiff also asserts work product protection over 32 entries in which the author is not

identified. (Pl. Mtn. at 18-19).  While acknowledging that the metadata does *not* contain an

author, Plaintiff's counsel asserts that "many of these were *apparently* written by Hayden," (*id.*

at 19) (emphasis added), and then lists Plaintiff as the author on the privilege log for many of the

---

[12] Certain withheld documents concern IP theft of AML Partners, not of Plaintiff's personal IP.  Plaintiff's legal claim does not concern AML Partners, nor has Plaintiff presented any argument that he had a common legal interest in such claim.  Accordingly, those communications must also be produced.  Additionally, certain redacted entries withhold pre-existing URLs, (*see, e.g.*, Redacted Log Nos. 4-6).  The URL material was not created by Plaintiff, whether in anticipation of litigation or otherwise, and must be produced.

documents in this category, (*see, e.g.*, Log Nos. 5, 57).  Plaintiff does not state the factual basis

for this assertion, nor does he provide other evidence in support, *e.g.*, an affidavit from Plaintiff

claiming authorship of such documents, or an attorney affidavit explaining the source of these

documents.  The Court is, therefore, unable to meaningfully assess whether these documents

were prepared by a party or its representative in anticipation of litigation.  Plaintiff cannot meet

the "heavy burden" of demonstrating the applicability of work product protection through

"mere[ly] conclusory or ipse dixit assertions." *In re Grand Jury Subpoena Dated July 6, 2005*,

510 F.3d at 184 (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d at 225).  To

the extent that Plaintiff is claiming protection over documents authored by non-parties, "[c]ourts

have routinely held that documents prepared by one who is not a party to the case at bar are not

protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in

which he will be disadvantaged if he must disclose in the instant suit." *Ricoh Co. v. Aeroflex Inc*.,

219 F.R.D. 66, 69 (S.D.N.Y. 2003); *see also Lapaix,* 2014 WL 11343854, at *5 (third-party

documents that were not prepared at the behest of the plaintiff, or "were not part of the

document" that the plaintiff sent to attorneys "are outside the range of materials that the work

product doctrine is intended to protect").  Accordingly, Plaintiff must produce "the 32 documents

withheld solely for work product [that] do not list [Plaintiff] as the sole author, recipient, etc."

listed in Plaintiff's footnote 16. (Pl. Mtn. at 19 n.16).

## 1.  Waiver

Unlike the attorney-client privilege, the work product doctrine's protection is not

automatically waived by disclosure to a third party. *Medinol, Ltd. v. Boston Scientific Corp.,* 214

F.R.D. 113, 114 (S.D.N.Y. 2002).  "Rather, the courts generally find a waiver of the work

product privilege only if the disclosure substantially increases the opportunity for potential

adversaries to obtain the information." *Williams v. Bridgeport Music. Inc.,* 300 F.R.D. 120, 123 (S.D.N.Y. 2014) (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)); *Medinol. Ltd.,* 214 F.R.D. at 115 ("[I]t is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine.").

IBM contends that Plaintiff waived work product protection by disclosing the withheld communications to third-party fact witnesses. (Def. Opp'n at 13-16). In essence, IBM argues that Plaintiff should disclose "communications between him, his attorneys, and his fact witnesses," including Bingham, Gotlieb, and Cohen. (*Id.* at 16 n.3 (listing withheld communications)). Plaintiff replies that the common interest doctrine applies to all of the withheld communications. (Pl. Reply at 5-7). Here, the Court finds that Plaintiff did not waive work product protection by disclosing communications to the BaaP team, Elkaim and Kusovski. First, for the reasons set forth above, Plaintiff shared a common interest with these individuals as to certain claims and during certain time periods, consistent with the Court's previously stated parameters. In any event, Defendants have not argued, and the Court does not find, that disclosure to those individuals would have substantially increased the opportunity for potential adversaries to obtain the information. *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 480 (S.D.N.Y. 1993) ("[T]he disclosure of work-product to another person with a shared interest in the material, even if not a litigation interest, does not waive the privilege unless the circumstances of the disclosure created a significant possibility that the material would ultimately be disclosed to an adversary."); *Lapaix,* 2014 WL 11343854, at *5 (finding no waiver where documents sent to third parties where "[t]he[] third parties did not…volitionally provide

-26-

the legal narrative drafts to [the plaintiff's] adversaries, nor could their loyalty to [the plaintiff] be questioned").

Second, regarding Defendants' arguments that Plaintiff waived work product protection under the "witness-disclosure rule," (Def. Opp'n at 13-16), the Court finds these arguments premature and inapplicable at this time.  The caselaw from this District cited by Defendants concerns cases where a non-party witness or her counsel had, in fact, been shown the privileged communications prior to a deposition. *See Alexander Interactive, Inc. v. Adorama, Inc*., No. 12 Civ. 6608 (PKC) (JCF), 2014 WL 12776440, at *10 (S.D.N.Y. June 17, 2014) ("The defendants produced such correspondence on December 27, 2013, which showed that defendants' counsel and [the non-party witness'] counsel had indeed exchanged e-mails prior to the deposition."); *S.E.C. v. Gupta*, 281 F.R.D. 169, 173 (S.D.N.Y. 2012) ("[T]he SEC and the USAO waived any selection and compilation privilege over which documents they believed were important when they showed those documents to [the non-party witness] during their prep sessions."); *Subramanian v. Lupin Inc*., No. 17-CV-5040 (RA) (KHP), 2019 WL 12038811, at *3 (S.D.N.Y. Sept. 4, 2019) ("The issue presented by Lupin's motion is complex, because Lupin seeks to learn about communications between counsel for Sellers and counsel for the witnesses—not information directly conveyed to the witnesses—and because different portions of the documents/communications are privileged, non-privileged, and/or work-product.").  Simply put, that is not the scenario here.  Therefore, the Court declines to find waiver on this ground.

## 2.  Substantial Need

Defendants further argue that even assuming, *arguendo*, Plaintiff's documents are work product, it has a substantial need for them for its statute of limitations defense and impeachment purposes. (Def. Opp'n at 17-22).  Plaintiff replies that Defendants "ha[ve] the[] facts already,"

and that courts have "regularly rejected" impeachment as a valid ground to override work product protection.  (Pl. Reply at 3, 8).

Work product is a qualified—not absolute—protection.  In addition, because the documents withheld on work product grounds are fact work product, they "are therefore entitled to only the most minimal protection." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000); *Lapaix,* 2014 WL 11343854, at *3 ("documents prepared by an agent for the attorney, by a party, and by an agent for a party are each one further step removed from the core and presumed to have a correspondingly weaker basis for protection"). Thus, "[a] party may obtain fact work product if it 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Durling*, 2018 WL 557915, at *7 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)).  "A substantial need exists 'where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Id*. (quoting *Nat'l Cong. for Puerto Rican Rts.*, 194 F.R.D. at 110 (footnotes omitted) (finding that plaintiffs had demonstrated substantial need where data compiled by defendants was "directly probative on many of the issues in this case").

Here, Defendants have demonstrated a substantial need for the work product documents regarding Plaintiff's IP theft claim authored by Plaintiff prior to March 22, 2018[13] because it is

---

[13] Defendants have pointed to inconsistencies in counsel's representations regarding the amount of work product authored by Plaintiff from January 2018 through April 2018, and its omission from Plaintiff's privilege log, as an independent basis for disclosure. (Def. Opp'n at 18-19).  On reply, Plaintiff explains that Defendants' statement is "[b]ased on a misstatement or misunderstanding," (Pl. Reply at 2 n.2), but the transcript of the March 16, 2023 Court conference comports with Defendants' statement, (Docket No. 109 at 8).  In any event, Plaintiff now represents that all documents created by Plaintiff during that time period have been logged and/or produced, (Pl. Reply at 2 n.2), rendering the omission issue moot.

essential to Defendants' statute of limitations defense, which may be crucial to Defendants' liability on that claim, and because the materials are highly probative to the issue of when Plaintiff discovered the alleged misappropriation of his trade secret. *See Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55-56 (S.D.N.Y. 1999) (ordering disclosure of work product where "[t]he interview notes and financial analyses on which the Trustee relied in producing the Final Report are essential to DLJ's and Merrill Lynch's defense"); *Durling*, 2018 WL 557915, at *8. Plaintiff has presented no legal support to the contrary on this point, and largely relies on his assessment as to the sufficiency of the discovery Defendants have received on underlying facts to date. (*See* Pl. Reply at 9). Moreover, Defendants cannot otherwise obtain this information without undue hardship. Since Defendants have already deposed Plaintiff on this topic and found his answers lacking, it is unclear how Defendants would otherwise obtain substantially equivalent information to support their defense. Accordingly, Plaintiff must produce the work product documents relating to his IP theft claim authored prior to March 22, 2018, unless the Court has already found that the document(s) are protected by the attorney-client privilege.

The Court also finds that Defendants have demonstrated a substantial need for work product regarding Plaintiff's IP theft claim authored by Plaintiff after March 22, 2018. Plaintiff argues that impeachment, alone, is insufficient to overcome work product protection. (*See* Pl. Reply at 10). However, Defendants do not solely rely on impeachment as justification for disclosure of these documents. (*See* Def. Opp'n at 19) ("IBM has substantial need for the many other documents in which Hayden assembled his purported evidence, as they may also show he believed he had enough evidence to raise his purported DTSA claim prior to March 22, 2018."). Additionally, this is not a situation where Defendants' impeachment arguments rest on "mere

surmise and suspicion," as Defendants have made "a showing that there is reason to believe that

[the party's] account of events at h[is] deposition likely conflicted with the" requested material.

*United States Sec. & Exch. Comm'n v. Collector's Coffee Inc*., 337 F.R.D. 70, 79, n.5 (S.D.N.Y.

2020), *objections overruled*, 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021)[14] (cited in Pl. Reply at

10).  Indeed, the Court's *in camera* review confirms that the requested material contains

information that, at minimum, "carries great probative value on contested issues," including

trade secret misappropriation, discovery and bad faith. *See Nat'l Cong. for Puerto Rican Rts.*,

194 F.R.D. at 110; *see also Durling*, 2018 WL 557915, at *8.  Moreover, based on review of the

testimony provided and the *in camera* materials, these documents may also contain impeachment

material that could not be obtained by other means.  Accordingly, Defendants have shown

substantial need for the fact work product authored by Plaintiff regarding his IP claim after

March 22, 2018, and it must be produced.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part.

In sum, Plaintiff must produce: (1) documents falling within the five categories of non-privileged

documents outlined in this Opinion and Order; (2) communications withheld on the basis of

common interest privilege amongst the BaaP team prior to March 2018; (3) communications

withheld on the basis of common interest privilege where third parties are copied regarding legal

claims for which Plaintiff did not share a common legal interest with others, including claims

arising under unnamed Federal Trade Commission laws, the Sarbanes Oxley Act and IRS

regulations, and Plaintiff's IP claims; (4) communications withheld as privileged where Elkaim

---

[14] In *Collector's Coffee*, the Court acknowledged that such a showing of inconsistency might have rendered *in camera* review proper to "determine if the notes in fact contain impeachment material," which is precisely what the Court did here. *Collector's Coffee Inc*., 337 F.R.D. at 79 n.5.

and Kusovski are copied or included regarding SEC whistleblower, OSHA, and False Claims Act claims prior to January 2020; (5) Plaintiff's standalone documents regarding his IP claim withheld as attorney-client privileged or work product, both pre-and-post March 2018; (6) the 32 documents withheld as Plaintiff's work product—regardless of subject matter—where the author is indeterminate; and (7) Plaintiff's standalone work product—regardless of subject matter—that was not prepared for litigation. Plaintiff must review the withheld documents and produce documents consistent with the parameters set forth herein by August 14, 2023. The Clerk of the Court is respectfully requested to terminate the pending motion (Docket No. 113).

Dated:   July 14, 2023
         White Plains, New York

                              **SO ORDERED:**

                              JUDITH C. McCARTHY
                              United States Magistrate Judge