# EXHIBIT B

**Yothers, Stuart W.**

| | |
|---|---|
| **From:** | Julio Gomez <JGomez@smcomplex.com> |
| **Sent:** | Friday, September 8, 2023 6:26 PM |
| **To:** | Yothers, Stuart W.; Ryan, Colleen Noonan; Holmes, Jacqueline M.; Kurtenbach, Collin |
| **Cc:** | David Stone; Robert Magnanini; Robert Goodman; Stephen Schweizer; Tara Saybe; Vanessa Espinal |
| **Subject:** | Hayden v. IBM |

**This Message Is From an External Sender**

If you are concerned about the message's content, highlight the email in your inbox and click "Report Suspicious" in the Outlook ribbon -or- contact 6Help.

Counsel,

Further to Defendants' letter of September 5th and today's meet and confer, below are Plaintiff's positions on the Topics of its Amended Notice of Rule 30(b)(6) deposition of IBM. In light of the intervening Ramamurthy deposition yesterday, we do not object if you submit your letter to the Court next week given the delays we have had in scheduling the meet and confer. Our office remains without power; please overlook the formatting of this communication.

1. **YOUR decisions to hire and terminate Plaintiff Gerald Hayden.** Plaintiff will depose Mr. Suarez on the subject of Plaintiff's termination; Plaintiff withdraws this Topic.

2. **YOUR training, orientation, and onboarding for new IBM employees generally and Plaintiff Gerald Hayden specifically, in November 2015, concerning, without limitation, policies related to protection of intellectual property, confidential or proprietary information, or trade secret(s), including any specific discussions or instructions with Plaintiff about IBM's Agreement Regarding Confidential Information, Intellectual Property and Other Matters (IBM-HAYDEN-000234278), his preparation of that form, and the information he listed on that that form.** Plaintiff agrees with Defendant's proposal if bates numbers are provided for the documents referenced in your September 5th letter.

3. **IBM's policies regarding the protection of IBM's and its employees' intellectual property, including IBM's Form Agreement Regarding Confidential Information, Intellectual Property and Other Matters (e.g. IBM-HAYDEN-000234278), and specifically whether IBM has ever licensed employee**

1

**intellectual property, the circumstances under which it has done so, and whether IBM has ever terminated any employees for using the IP of other IBM employees.** Plaintiff proposes that Defendants produce a person in IBM's licensing department to explain the process for an employee licensing IP and how often it has occurred at IBM. Hayden was told by employees that he needed a customer to incorporate his IP or get an executive to support it; whether IBM has entered into licenses with employees either in connection with customer seeking product or IBM's decision to fund; Plaintiff is not seeking specifics about transactions, but general information about this practice.

4. **IBM's policies with respect to the assignment of Billing and Pursuit Code ("B&P Code"), engagement code, collaboration rules, and/or entitlement for bonuses during the period of November 2015 to the date of the Complaint.** Plaintiff accepts Defendants' proposal.

5. **YOUR decision to terminate Plaintiff Gerald Hayden and Daniel Gotlieb.** Plaintiff will withdraw this topic if Defendants provide the basis for the decision to terminate Daniel Gotlieb. As to Hayden, as noted above, we will question Suarez.

6. **IBM's plans or efforts to build a "SuperCRM," using customer data from sources on a hybrid cloud.** Plaintiff will narrow this request to a witness who will speak about the Super CRM referred to in IBM-HAYDEN-000194884; additionally, we are informed that Fred Balboni was developing a similar CRM.

**Topics 7-14, 23, 25, 26 below.** Plaintiff will be in a position to narrow the scope of this request upon receipt of documents responsive to Plaintiff's August 17, 2023 set of document requests. As we noted, we believe that IBM's demands that fact discovery be closed while Defendants are still producing documents that are needed to take depositions and supply to our experts are prejudicial; if Defendant produces such documents, upon review of the documents, we will narrow these topics. In many cases these topics and information sought can be streamlined if IBM produces documents on these subjects. In the meantime, Plaintiff agrees to narrow and propose methods to limit these topics as follows. For 7, 8, 9, and 11, we are willing to narrow the scope to when the product was conceived, the individuals involved in the conception of the product, if the product was

2

conceived after January 1, 2017, whether and how the product was modified to operate on the cloud, whether the product has any of the features and functions listed in the numbered paragraphs at the end of Plaintiff's response to Interrogatory No. 1; as to subsections on revenues and costs, Plaintiff will accept documents sufficient to determine that information from 2017 to the present and a witness to help explain those documents.  For 10, Cognitive Enterprise, only the initial conception of the idea and the development between 2017 to the present; Plaintiff will drop subsection (c) and (d), and as to (e), (f) and (g) we will agree to the same procedure previously proposed for 7, 8, 9 and 11.

7. **IBM's Cloud for Financial Services generally and specifically, each of the following:**

   a. **Initial conception of idea;**

   b. **Development;**

   c. **Features and Functions, and modifications;**

   d. **Marketing;**

   e. **Costs;**

   f. **Revenues; and**

   g. **Royalties.**

8. **IBM's Open Banking Platform generally and specifically, each of the following:**

   a. **Initial conception of idea;**

   b. **Development;**

   c. **Features and Functions, and modifications;**

  d.  Marketing;

  e.  Costs;

  f.  Revenues; and

  g.  Royalties.

9.  IBM's Cloud Pak products generally and specifically, each of the following for Cloud Pak for Data, Cloud Pak for Integration, Cloud Pak for MultiCloud Management, Cloud Pak for Security, Cloud Pak for Watson AIOps, Cloud Pak for Applications, Cloud Pak for Network Automation, Cloud Pak for Automation:

  a.  Initial conception of idea;

  b.  Development;

  c.  Features and Functions, and modifications;

  d.  Marketing;

  e.  Costs;

  f.  Revenues; and

  g.  Royalties.

10.  IBM's Cognitive Enterprise generally and specifically, each of the following:

  a.  Initial conception of idea;

  b.  Development;

    c.       Features and Functions, and modifications;

    d.       Marketing;

    e.       Costs;

    f.       Revenues; and

    g.       Royalties.

11.       IBM Intelligent Workflows products or solutions, generally and specifically, each of the following for IBM Cloud Paks, Planning Analytics, Cognos Analytics, Watson Studio, Watson Discovery, Watson Assistant:

    a.       Initial conception of idea;

    b.       Development;

    c.       Features and Functions, and modifications;

    d.       Marketing;

    e.       Costs;

    f.       Revenues; and

    g.       Royalties.

12.       Market analyses, analyses of competitors, and Return on Investment (ROI) or download reports (e.g., IBM-HAYDEN-001644311) concerning IBV papers related to Cognitive Enterprise or **Intelligent Workflows).**  This topic is not limited to IBV documents; it seeks information about market analysis, analyses of competitors and Return on Investment reports specifically relating to the Cognitive

Enterprise or Intelligent Workflows strategy and copies of the annual reports of downloads that IBV generates; with respect to the portion of the topic that does relate to IBV papers, we would agree this topic can be satisfied by producing the IBV download reports testified to by Mr. Ramamurthy at his deposition for years 2017 to the present and producing someone familiar with those reports; IBM may omit papers unrelated to the Cognitive Enterprise or Intelligent Workflows; this is information that our experts have told us they require for their reports.

13. Royalties paid by IBM partners to YOU related to Intelligent Workflows products and/or solutions.

14. IBM Bluewolf/Salesforce Lightning Bolt Products (e.g. IBM Bluewolf Lightninig Bolt for Insurance, for Telco, for Clinical Trials and Patient Management) (GH_00021595) generally and specifically, each of the following:

    a. Initial conception of idea;

    b. Development;

    c. Features and Functions, and modifications;

    d. Marketing;

    e. Costs;

    f. Revenues; and

    g. Royalties.

15. IBM has not denied that it incorporated Plaintiff's IP into its products or solutions; if it is IBM's position that IBM did so, but had a right to do so, then: IBM's incorporation of any of the

elements identified in Plaintiff's response to Defendants' Interrogatory No. 1, as supplemented, into any IBM solution(s), product(s) or service(s).  Plaintiff withdraws this Topic.

16. **The reason(s) for and timing of YOUR decision to acquire Red Hat, Inc.**  Plaintiff will withdraw this Topic if Defendants produce the document submitted to its Board recommending and/or seeking approval to acquire Red Hat.

17. **YOUR revenue from RedHat Open Shift and RedHat Marketplace from 2018 to the present, and to the extent such revenue is captured in relation to Cognitive Enterprise or Intelligent Workflows products or solutions, then by product or solution.**  Plaintiff will consider withdrawing this Topic subject to Defendants producing the document identified above in the discussion concerning Topic 16; if the document indicates that Cognitive Enterprise or Intelligent Workflows solutions played no part in the decision to acquire RedHat, Plaintiff will consider withdrawing this topic; as we stated in our meet and confer, Mr. Ramamurthy has testified and the documents will show that Red Hat Open Shift and Red Hat Marketplace were a critical component of IBMs Intelligent Workflows strategy and that Intelligent Workflow products generated substantial revenues to IBM through Red Hat Open Shift and Red Hat Marketplace; the position that Red Hat is not a party to the case is irrelevant because IBM owns Red Hat.

18. **The reason(s) for and timing of YOUR decision to acquire TruQua Enterprises, LLC.**  Plaintiff will withdraw this Topic if Defendants produce the document submitted to its Board recommending and/or seeking approval to acquire TruQua; as we told you our experts have opined that IBM's acquisition of TruQua is supportive of Hayden's claim that IBM adopted Hayden's solution.

19. **The reason(s) for YOUR decision to commission *Reinventing Workflows* from Forrester Consulting in 2019, YOUR COMMUNICATIONS with Forrester Consulting about this report, and the amount paid to Forrester Consulting for this report.**  Plaintiff refers Defendants to the document on IBM's website at https://www.ibm.com/downloads/cas/KNQQOLGG ; this is relevant to Plaintiff's allegation that IBM used IBV to create a market for Intelligent Workflows, masking as thought leadership and independent study.

**20.     Patents concerning Cognitive Enterprise or Intelligent Workflows products or solutions and revenues derived from those patents through licensing or otherwise.**  Plaintiff proposes to limit this Topic to the 8 patents identified in his response to Defendants' Interrogatory No. 24.

**21.     Royalties paid by YOU to any PERSON related to any of the patents identified in Plaintiff's response to Defendants' Interrogatory No. 24, as supplemented.**  Plaintiff proposes to limit this Topic to the 8 patents identified in his response to Defendants' Interrogatory No. 24.

**22.     Reorganization of IBM GTS and the creation of IBM Garage and IBM iX.**  Plaintiff withdraws this Topic.

**23.     IBM Garage or iX projects or engagements concerning Intelligent Workflows products or solutions generally, and specifically, each of the following:**

    a.     **Clientele;**

    b.     **Deliverables to each client;**

    c.     **Costs; and**

    d.     **Revenues/Profits.**

**24.     IBM's Fall Plans for Banking and Financial Services from 2016 to the present.**  Plaintiff may withdraw this Topic if the information is obtained through the depositions of the currently scheduled deponents.

**25.     IBM's partnerships, products developed with and revenues derived from YOUR work with each of the following:**

    a.     **Salesforce;**

b. SAP;

c. Deloitte;

d. Adobe;

e. Knowis;

f. Intellect;

g. Microsoft;

h. Amazon Web Services;

i. Fenergo; and

j. Equifax.

26. The features and functions of any products/solutions offered and/or sold to each of the following:

a. National Australia Bank;

b. Mizuho;

c. OP Bank;

d. Ocean Bank;

e. Fifth Third Bank;

f. Banco Bilbao Zizcaya Argentaria (BBVA);

g. WestPac;

h. Yantra;

  i. American Express;

  j. Banco Santander;

  k. Deutsche Bank;

  l. JPMC;

  m. Wells Fargo;

  n. Lloyd's Banking Group;

  o. SunTrust BB&T;

  p. PayPal;

  q. BPER;

  r. MetLife;

  s. BNY Mellon; and

  t. Citibank.

27. The reason(s) for YOUR creation of the Platinum Partners program and any changes to that program in relation to the Cognitive Enterprise and/or Intelligent Workflows products or solutions.  Plaintiff refers Defendants to IBM's website at https://www.ibm.com/partnerplus/directory

  28. The real time balance sheet management services announced by IBM in partnership with Deloitte.  Plaintiff has a subpoena outstanding to Deloitte and will provide documentation concerning this topic.

Thank you

On behalf of David Stone

**Julio C. Gomez**

**STONE & MAGNANINI LLP**
400 Connell Drive, Suite 6200
Berkeley Heights, NJ 07922
P 973-218-1309 / F 973-218-1106 / C 908-468-1068
jgomez@smcomplex.com

This transmission in intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee of agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

To ensure compliance with requirements imposed by the IRS, we inform you that, unless explicitly provided otherwise, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

If you have received this communication in error, please notify us immediately via e-mail at Postmaster@smcomplex.com or by telephone at 1-973-218-1111.  Thank you.