# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD HAYDEN,<br><br>              Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, PABLO SUAREZ and SHANKER RAMAMURTHY,<br><br>        Defendants. | No. 7:21-CV-02485-VB-JCM<br><br>**DECLARATION OF DAVID TRINH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

       I, DAVID TRINH, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

       1.     I submit this declaration in support of Plaintiff Gerald Hayden's opposition to Defendants' Motion for Summary Judgment.

       2.     I was employed by IBM from July 2015 to December 2020 in a variety of roles in which I worked closely with an IBM Partner known as Salesforce, the market leader in Customer Relationship Management (CRM) technology. These positions included serving as the Salesforce Go-to-Market Lead and the Global Industry Solutions Lead. In 2016, IBM acquired Bluewolf, a provider of consulting services that works exclusively with Salesforce. Because of my expertise and knowledge concerning Salesforce and CRM technology, both prior to and after coming to IBM, I was asked by my supervisor at the time to begin working with Bluewolf. Throughout my time at IBM and while working with Bluewolf, I was one of IBM's main liaisons with Salesforce and one of the people in charge of overseeing the development of solutions to be used and marketed with Salesforce.

3. I first met the plaintiff in this case, Gerald Hayden, in 2017. I participated in an initial conference call with Mr. Hayden and one of his colleagues, Daniel Bingham, in May of that year. This was followed by as many as ten or more additional calls and meetings, as well as frequent email communications. Mr. Hayden introduced to me his "A2E" solution that he had developed prior to coming to IBM, and shared with me architectures and other documents providing a detailed explanation of his proposed solution. Mr. Hayden explained that A2E was based on his experience in senior positions at several banks and financial services firms, as well as in the technology sector. I was very impressed by Mr. Hayden's A2E and saw tremendous potential value in what Mr. Hayden was proposing, particularly in connection with designing solutions for Bluewolf and Salesforce. A key aspect of Hayden's A2E solution was the use of a "Super CRM" that could collect data from multiple data sources from both inside and outside a business or enterprise and apply analytics to that data, an approach that both was novel and was likely to have great appeal in the marketplace.

4. At the time that I met Mr. Hayden, he was looking for funding to build the Super CRM that was an important component in executing on A2E. I agreed to help Hayden and to present this request to my superiors and to support the request. My team was asked by my superiors to evaluate Mr. Hayden's proposed Super CRM, and to determine whether it could be coded. We determined that it could be coded and built at a cost of approximately $250,000. My team and I prepared a document describing our analysis and conclusions. Although this document should be stored and accessible at IBM, it is my understanding that IBM has not produced the document in discovery.

5.	I also recall discussing with Mr. Hayden a list of patents that he wanted to obtain in connection with A2E and the Super CRM after it was built, and I agreed with him that these patents should be obtained.

6.	Ultimately I was told by my superiors that Bluewolf could not build the Super CRM with Hayden because to do so would require providing B&P code to IBM employees outside of Bluewolf, which wasn't permitted.  Instead, my supervisors discussed with me with taking the architectures that Mr. Hayden had shared with me that embodied his A2E solution and incorporating them into specific different industry offerings that Bluewolf was developing for use with Salesforce.  In late 2017 or early 2018, I was given the go-ahead to do this.

7.	As I stated above, Mr. Hayden made clear that his A2E had been developed prior to his coming to IBM.  Mr. Hayden shared this fact with my superiors at Bluewolf, as did I.  I believed that my superiors were working out how Mr. Hayden's solution would be dealt with from an intellectual property perspective.  I was never told or led to believe that this was my job, and I did not believe that this was the case.

8.	That said, I was careful to communicate that Mr. Hayden's A2E solution was going through IP credentialing when sharing one of Mr. Hayden's PowerPoint presentations with a colleague, the IBM Bluewolf Financial Services and Banking Lead for the UK and Europe.  I specifically told my colleague that, because Mr. Hayden's solution was going through IP credentialing, she should not share it publicly.  Although she wanted to discuss some of the concepts reflected in Mr. Hayden's PowerPoint with a number of UK banks such as Lloyd's, I advised her that she could not provide specific details or share the PowerPoint itself.

3

9. Based on my superior's instructions, I provided Mr. Hayden's architectures to my team and I oversaw my team's incorporation of Mr. Hayden's A2E architectures into at least the following 13 different Bluewolf solutions marketed under the names "AI Now" and "Lightning Bolt." These solutions included AI Now for Insurance, AI Now for Wealth Management, AI Now for Financial Planning, AI Now for Patient Services, AI Now for Sampling Management, AI Now for Patient Control Centers, AI Now for Utilities, AI Now for Telecommunications, and several others. These AI Now and Lightning Bolt solutions assembled, and applied analytics to, customer data from multiple CRMs as proposed in Mr. Hayden's A2E.

10. I have personal knowledge that the AI Now and Lightning Bolt solutions incorporating Mr. Hayden's architectures were marketed by IBM/Bluewolf and Salesforce and generated significant revenues. I also have personal knowledge that IBM was able to track and did keep track of these revenues, although it is my understanding that IBM did not produce information relating to these revenues in discovery in this case.

11. Also during this 2017-2018 time period, Bluewolf was asked by the team spearheading an "Offerings Initiative" under the leadership of Mark Foster, the head of IBM's Global Business Services ("GBS"), to provide copies of Bluewolf assets to the GBS offering team for use in developing industry platform-based solutions to be marketed by GBS. As instructed, my team and I sent copies of the architectures and other materials provided to me by Mr. Hayden to an internal IBM drop box to be accessed and used by the GBS offerings team to create these new industry solutions. There were a series of such requests by the GBS offering team, including one or more requests sent by or on behalf of Mr. Foster's Offerings Lead, Jean-Stephane Payraudeau.

12. As part of the Offerings Initiative, GBS published in late 2019 an internal go-to-market document called "IBM Services Strategy and Capabilities 2020 Edition" describing the industry solutions developed by the GBS offering team. Upon reviewing this document, I recognized many aspects of Mr. Hayden's architectures that appeared to have been incorporated in a number of the solutions described in the document. The document also contained numerous references to "intelligent workflows" that appeared to me to have been used as a shorthand for Hayden's A2E methodology reflected in the architectures and other documents I had been directed to share with the GBS offering team. This was the first time that IBM had offered solutions of this kind or used the "intelligent workflows" terminology in this manner to my knowledge.

13. It is my understanding that Mr. Hayden was terminated by IBM in October 2018. I was not initially aware of Mr. Hayden's termination, and first became of aware of Mr. Hayden's termination when Mr. Hayden contacted me and informed me of that fact. It was at that time I learned from Mr. Hayden for the first time that no arrangement to license his IP had been reached with Mr. Hayden and he was terminated after claiming that IBM had stolen his IP and incorporated it into certain products.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

Dated: July  16 , 2024

_____
David Trinh

5