UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GERALD HAYDEN,                                        :
                Plaintiff,                      :
                                     :          **OPINION AND ORDER**

v.                                                   :
                                      :          21 CV 2485 (VB)

INTERNATIONAL BUSINESS MACHINES              :
CORPORATION, PABLO SUAREZ, and               :
SHANKER RAMAMURTHY,                           :
                Defendants.                     :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Gerald Hayden brings this action against defendants International Business

Machines Corporation ("IBM"), Pablo Suarez, and Shanker Ramamurthy.  Plaintiff asserts

claims for unjust enrichment and retaliatory discharge under the Sarbanes-Oxley Act.

Now pending is defendants' motion to exclude or, in the alternative, bifurcate.  (Doc.

#324).

For the reasons set forth below, defendants' motion is GRANTED IN PART and

DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

The Court presumes the parties' familiarity with the facts and procedural history of this

case and recites only those facts relevant to the pending motion.

I.     Plaintiff's Initial Disclosures and Interrogatory Responses

On November 10, 2021, plaintiff made his initial disclosures pursuant to Fed. R. Civ. P.

26(a).  (Doc. #326-2).  The initial disclosures stated, "[p]laintiff shall rely on a damages expert to

calculate damages."  (Id. at 5–6).

Thereafter, defendants served plaintiff with two interrogatories relevant to the instant motion.  First, interrogatory 5 sought, among other things, "the measure and calculation of any and all damages sought . . . in this litigation."  (Doc. #326-1 at 16).  Second, interrogatory 15 sought

> the complete factual and legal basis for [plaintiff's] contentions in the Complaint that Defendants have been unjustly enriched, including without limitation the amount of any and all alleged unjust enrichment, the measure and calculation for the alleged unjust enrichment, the date on which the calculation should begin, and any other contentions [plaintiff has] regarding Defendants' alleged unjust enrichment.

(Id. at 51).

On May 11, 2022, plaintiff responded to interrogatory 5, listing over a dozen "categories of damages" he was seeking.  (Doc. #326-1 at 16–17).  One such category was "unjust enrichment damages."  (Id.).  Plaintiff did not specify which categories of damages were associated with each of his claims.  (See id.).  The only "categories of damages" for which plaintiff provided a measure of damages were lost wages, lost bonuses, and damages arising from diminishment of plaintiff's cash position and early retirement plans.  (Id.).

On May 27, 2022, plaintiff responded to interrogatory 15 as follows:

> Referred Defendants to the documents produced in this action and the testimony of Plaintiff at his deposition taken on May 12, 2022.  Plaintiff further states that, to the extent that Defendants failed to question Plaintiff concerning the subject matter of this interrogatory at his deposition, they elected not to avail themselves of the opportunity to do so.

(Doc. #326-1 at 51–52).

## II.     Plaintiff's Supplemental Interrogatory Responses

On August 17, 2022, defendants' counsel requested a pre-motion conference to resolve discovery disputes.  (Doc. #49).  Relevant to the instant motion, defendants argued plaintiff's

responses to interrogatories 5 and 15 were deficient.  (Id. at 3).  The Court referred this and other discovery disputes to Magistrate Judge Judith C. McCarthy.  (Doc. #50).

On September 15, 2022, the parties appeared before Judge McCarthy.  (Doc. #62).  Judge McCarthy sustained plaintiff's objection to interrogatories 5 and 15 to the extent those interrogatories required plaintiff to provide the "complete factual and legal basis" for his position.  (Id. at Tr. 56).  However, notwithstanding that ruling, Judge McCarthy ordered plaintiff to supplement his responses to interrogatories 5 and 15 by setting forth "the amount of damages alleged with respect to each claim" and "the methodology and calculations for arriving at those figures and the general types of evidence that support the calculations."  (Id. at Tr. 56–57).  Plaintiff was also ordered to supplement those responses as appropriate after expert discovery.  (Id. at Tr. 58).

On June 13, 2023, plaintiff made additional supplemental responses to defendants' interrogatories.  In response to interrogatory 15, plaintiff explained defendants unjustly received a share of revenues associated with IBM products which utilized plaintiff's intellectual property ("IP").  (Doc. #326-1 at 52).  Plaintiff also stated "IBM was unjustly enriched, at least to the extent that it avoided paying Hayden a reasonable royalty from revenues on the products and services which utilized Hayden's IP."  (Id. at 53).  Plaintiff's June 13 supplemental responses did not include an amount or computation of unjust enrichment damages.

On July 21, 2023, plaintiff again supplemented his response to interrogatory 15.  This response referred defendants to evidence regarding the factual basis for plaintiff's unjust enrichment claim.  Plaintiff's July 21 supplemental response did not provide any amount or computation of unjust enrichment damages.  (Doc. #326-1 at 53).

Although fact discovery in this case was initially set to close on June 27, 2022, the Court granted plaintiff five separate extensions, totaling an additional 466 days of fact discovery. Fact discovery ultimately closed on October 6, 2023. (Doc. #216).

On November 9, 2023, plaintiff requested that discovery be reopened to enable him to obtain further information regarding IBM products and to conduct further depositions. (Doc. #180). Judge McCarthy denied plaintiff's request, noting there was no good cause to again extend the discovery period. (Doc. #222 at Tr. 3–7). Judge McCarthy also found plaintiff was not diligent in pursuing discovery and had "created the situation he now complains about." (Id. at Tr. 5–6). For example, plaintiff disregarded the Court's discovery deadlines, ignored defendants' discovery requests, and failed to take his first deposition until September 7, 2023, more than two years into discovery. (Id.). Further, Judge McCarthy observed plaintiff had delayed trial through his continued use of discovery as a "fishing expedition." (Id. at Tr. 7).

III.    Expert Discovery

On February 2, 2024, plaintiff disclosed the expert report of Dr. Steven Schwartz. Dr. Schwartz's report analyzed "(a) the damage to Mr. Hayden as a result of IBM's [] alleged misappropriation of trade secrets and (b) lost earnings damages to Mr. Hayden as a result of IBM's alleged retaliation." (Doc. #341-5 at 2). To that end, Dr. Schwartz stated:

> I understand that damages for trade secret misappropriation can include the actual loss caused by the misappropriation of the trade secret and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss. I further understand that unjust enrichment in a trade secrets case is the gain—measured in all forms in which there is a resulting increase in the wealth of the misappropriator—that flows from the misappropriation.

(Id. at 3). Dr. Schwartz explained he would calculate IBM's gain by using a "head start model," which is employed "in situations where a respondent's use of misappropriated trade secrets

4

allowed it to accelerate generation of sales and profits that would otherwise have generated later." (Id. at 29). Dr. Schwartz's head start calculations relied on the findings of plaintiff's technical expert, David Martin. (Id. at 2).

Defendants offered the expert report of John Jarosz to rebut Dr. Schwartz's damages calculations. (Doc. #349-1). Mr. Jarosz noted plaintiff asserted seven causes of action, but observed "Dr. Schwartz limited his analysis and opinions to the damages associated with Defendants' alleged misappropriation of Mr. Hayden's claimed trade secrets and Defendants' alleged improper termination of Mr. Hayden." (Id. at 1). In addition to rebutting Dr. Schwartz's calculations, Jarosz also presented an alternative calculation of damages for trade secret misappropriation, which calculated IBM's "avoided development costs" using the highest hourly rate for "IBM Band 10 employees" multiplied by the 40,800 hours plaintiff claimed he spent developing his alleged trade secret, "A2E." (Id. at 7–8). However, Jarosz made clear "[n]either Mr. Hayden nor Dr. Schwartz has claimed that this represents the losses of Mr. Hayden here, nor do I believe that to be the case. It represents an amount that, arguably, IBM avoided investing in its own employees to develop the alleged trade secrets." (Id.).

IV.    Summary Judgment and Plaintiff's 2026 Damages Disclosures

On June 17, 2025, the Court granted in part and denied in part defendants' motions to preclude Mr. Martin's expert testimony and for summary judgment. (Doc. #305). Relevant to the instant motion, the Court found Martin's expert testimony was inadmissible because his opinions were not based on sufficient facts and he did not apply reliable methodologies to reach his conclusions. (Id. at 9–21). The Court also granted defendants summary judgment on plaintiff's claims for misappropriation of trade secrets because plaintiff did not possess trade secrets as a matter of law. (Id. at 22–38).

However, the Court denied defendants' motion for summary judgment as to plaintiff's unjust enrichment claim. (Doc. #305 at 43–44). Consistent with plaintiff's arguments, the Court held the theory of liability underpinning plaintiff's unjust enrichment claim was distinct from that underpinning his trade secret misappropriation claims. Specifically, "[t]he crux of plaintiff's unjust enrichment claim is that defendants hired and compensated him solely for his subject matter expertise, but that defendants took more than what they bargained for when they misappropriated and repurposed plaintiff's A2E methodology into their own product offerings." (Id. at 44). Thus, the Court rejected defendants' argument that plaintiff's unjust enrichment claim should be dismissed as duplicative of his failed trade secret misappropriation claims.

On July 10, 2025, the Court conducted a case management conference, at which the Court explained this was no longer a "trade secrets" case, and cautioned plaintiff against trying to "cram in" his dismissed trade secrets case to his surviving unjust enrichment case. (Doc. #316 at Tr. 16). Plaintiff's counsel assured the Court that this would not happen. (Id.). At this point, defense counsel highlighted for the Court that plaintiff had never disclosed an amount or computation of unjust enrichment damages. (Id. at Tr. 16–17). Plaintiff offered no response on this issue. (Id.).

On January 6, 2026—one day before the Court's next conference in this case—plaintiff served further supplemental responses to defendants' interrogatories. (Doc. #326-7). Plaintiff did not seek leave of Court before serving these supplemental responses.

Among other things, plaintiff's January 6, 2026, disclosures set forth various amounts and computations of unjust enrichment damages. First, plaintiff disclosed a theory of damages for "compensation/restitution" in the amount of ▮▮▮▮▮▮. (Doc. #327-7 at 5). This amount was calculated using the 40,800 hours it took plaintiff to develop A2E, multiplied by the highest

hourly rate for IBM's "Band 10" employees, which was ███ per hour. (Id.). Plaintiff also argued such damages could instead total ███████ based on a higher hourly rate of ███ per hour. (Id.). Second, plaintiff listed "disgorgement" damages in the amount of ███████, representing "controllable profits" IBM generated from products allegedly incorporating plaintiff's A2E.[1] (Id. at 6).

The Court conducted a case management conference on January 7, 2026, at which it granted defendants leave to file the instant motion to exclude, or in the alternative, bifurcate. On January 20, 2026—the day before defendants' motion was due—plaintiff again submitted further supplemental responses to defendants' interrogatories. (Doc. #326-8). These disclosures identified additional documents forming the basis for plaintiff's unjust enrichment damages. (Id.). These disclosures were again made without first seeking leave of Court.

**DISCUSSION**

I.   Legal Standard

Rule 26(a) states a party must provide to another party "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). "Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a computation, supported by documents."[2] Design Strategy, Inc. v. Davis, 469 F.3d 284, 295 (2d Cir. 2006). In other words, Rule 26 contemplates both an estimate of damages and

---

[1]   Plaintiff also listed "reasonable royalty" damages in amounts ranging from ███████ to ███████ and indicated he would seek the Court's leave to reopen discovery and present additional expert opinions on reasonable royalty damages. (Doc. #326-7 at 6). Plaintiff has since conceded these reasonable royalty damages are "subject to significant evidentiary challenges" and he has withdrawn this request and portion of his January 6, 2026, disclosure. (Doc. #336 at 17).

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

analysis supporting that estimate.  See Scantibodies Laboratory, Inc. v. Church & Dwight Co., Inc., 2016 WL 11271874, at *16 (S.D.N.Y. Nov. 4, 2016) (report and recommendation adopted, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017)).

In turn, Rule 26(e) requires a party to, in a timely manner, supplement or correct their disclosures either as ordered by the Court or "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1).

To ensure compliance with the foregoing rules, Rule 37(c) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); see also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) ("The purpose of Rule 37(c) is to prevent the practice of sandbagging an adversary with new evidence.").  "The burden to prove substantial justification or harmlessness rests with the dilatory party."  Am. Stock Exch., LLC v. Mopex Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

This Court ultimately has "wide discretion" to impose severe sanctions for a party's failure to timely disclose, including preclusion.  Design Strategy, Inc. v. Davis, 469 F.3d at 294. In weighing whether to preclude untimely disclosed evidence, courts should consider (i) the party's explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a continuance.  See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

II.    Analysis

Defendants argue plaintiff's failure to timely disclose a computation of his unjust enrichment damages warrants the preclusion of plaintiff's January 2026 damages disclosures—including the theories and evidence identified therein—and by extension the dismissal of his unjust enrichment claim.

The Court agrees.

A.    Plaintiff Did Not Satisfy His Rule 26(a) Obligations

At the outset, the parties dispute whether plaintiff, prior to January 2026, disclosed a computation of unjust enrichment damages in accordance with his Rule 26 obligations. After thoroughly reviewing the record, the Court finds plaintiff, despite the Court's warning, failed to timely disclose any amount or computation of damages for his unjust enrichment claim.

It is undisputed that plaintiff's initial Rule 26 disclosures did not provide an amount or computation of unjust enrichment damages. Indeed, plaintiff initially disclosed in November 2021 only that he would "rely on a damages expert to calculate damages." (Doc. #326-2 at 5–6). Of course, this is not the end of the inquiry, as the initial disclosure requirement of Rule 26 is "buttressed" by a duty to supplement disclosures and discovery responses in a timely manner. Benson v. Gardner, 2022 WL 523729, at *4 (N.D.N.Y. Feb. 22, 2022).

Nevertheless, plaintiff did not properly supplement his initial disclosures. Plaintiff points to his May 2022 responses to defendants' interrogatories 5 and 15 in which he disclosed he would pursue "unjust enrichment damages." (Doc. #336 at 10). This hollow disclosure merely listing "unjust enrichment damages" as one of several "categories of damages" in no way satisfied plaintiff's Rule 26 obligations. (Doc. 326-1 at 16). Rule 26 "does not merely require a plaintiff to describe its damages in general terms," but instead "to provide a computation of each

9

category of damages, and to produce the documents on which that computation is based."

Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. at 159.

The insufficiency of these responses was no mystery to plaintiff.  In September 2022, Judge McCarthy specifically ordered him to supplement his responses—including his responses to interrogatories 5 and 15—by setting forth "the amount of damages alleged with respect to each claim" and "the methodology and calculations for arriving at those figures."  (Doc. #62 at Tr. 56–57).  To be sure, plaintiff supplemented his responses several times during the discovery period.  But his supplemental responses with respect to his unjust enrichment claim remained inadequate.

Despite their length, plaintiff's 2023 supplemental responses to interrogatories 5 and 15 never provided a computation of unjust enrichment damages supported by documents.  (Doc. #326-1 at 16–19, 51–53); see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d 221, 238 (S.D.N.Y. 2018) (highlighting plaintiff's failure to "provide any citations to documents or testimony" supporting its damages theories); Gould Paper Corp. v. Madisen Corp., 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (holding disclosure of hundreds of pages of documents detailing the basis for damages claims did not satisfy Rule 26 obligations because they did not include a computation of each category of damages claimed).  This failure is "especially troubling" because defendants "specifically requested a calculation of damages" for plaintiff's unjust enrichment claim.  Design Strategy, Inc. v. Davis, 469 F.3d at 295.

Plaintiff does not meaningfully grapple with this failure.  Rather, in an apparent attempt to shift the focus away from his previous shortcomings, plaintiff argues his untimely January 2026 disclosures—which do provide an amount or computation of unjust enrichment damages— merely "summarize" and "clarify" his previous disclosures.  (Doc. #336 at 1, 17).  In essence,

10

plaintiff asserts the computations of unjust enrichment damages, disclosed for the first time in 2026, are not novel but rather were disclosed in a timely manner before the close of discovery.

The Court is not persuaded. For example, plaintiff's untimely 2026 disclosures assert unjust enrichment damages in the amount of ██████, calculated using the 40,800 hours it allegedly took plaintiff to develop A2E, multiplied by the highest hourly rate for IBM's "Band 10" employees. (Doc. #327-7 at 5). Plaintiff argues this computation was timely disclosed because (i) in 2023 he disclosed the number of hours he devoted to developing A2E (Doc. #336 at 11, 17), and (ii) defendants at that time possessed documents containing the hourly rates which could be used to calculate this amount (id. at 11 n.22).

This argument is meritless. "[B]y its very terms, Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a computation, supported by documents." Design Strategy, Inc. v. Davis, 469 F.3d at 295. Thus, the fact that defendants in 2023 possessed information from which they could have independently determined plaintiff's damages did not relieve plaintiff of his burden to affirmatively disclose that computation. See Spontana Inc. v. Am. Talent Agency, Inc., 2010 WL 3341837, at *1 (S.D.N.Y. Aug. 17, 2010). And, again, plaintiff's 2023 supplemental responses did not affirmatively disclose an amount or computation of unjust enrichment damages, nor did they cite to documents supporting such computation. (Doc. #326-1 at 16–19, 51–53).

Further, plaintiff improperly relies on disclosures pertaining to his since-dismissed misappropriation of trade secrets claim rather than disclosures pertaining to his surviving unjust enrichment claim. Indeed, plaintiff's disclosure of the number of hours it took him to develop A2E was made in response to interrogatory 17, which sought "the value of each alleged trade secret" which plaintiff contended was misappropriated. (Doc. #326-1 at 54–56). Defendants had

11

no reason to believe this information buried in a disclosure regarding misappropriation of trade secrets was relevant to calculating unjust enrichment damages.  See Thompson v. Jamaica Hosp. Med. Ctr., 2015 WL 7430806, at *2 (S.D.N.Y. Nov. 20, 2015) ("[D]isclosures must be sufficiently specific that the opposing party has some basis to calculate the damages claimed against it.").  Meanwhile, plaintiff's responses to interrogatories 5 and 15, which specifically requested a measure of damages for unjust enrichment, did not mention this information.  (Doc. #326-1 at 16–19, 51–53).  The Court thus rejects plaintiff's contention that facts disclosed in relation to his failed misappropriation of trade secrets claim somehow satisfied his Rule 26 obligation to affirmatively disclose an amount and computation of damages for his unjust enrichment claim.[3]

Plaintiff is similarly mistaken in his assertion he disclosed a measure of unjust enrichment damages through Dr. Schwartz's expert report.  (Doc. #336 at 14–15).  Plaintiff claims "Dr. Schwartz's opinions . . . while couched in terms of trade secret misappropriation, are also applicable to Plaintiff's unjust enrichment from [IBM's] alleged unauthorized use of Plaintiff's intellectual property."  (Id. at 15).  Not so.  Dr. Schwartz explicitly cabined his report to analysis of "(a) the damage to Mr. Hayden as a result of IBM's [] alleged misappropriation of trade secrets and (b) lost earnings damages to Mr. Hayden as a result of IBM's alleged retaliation."  (Doc. #341-5 at 2).  To the extent Dr. Schwartz used the term "unjust enrichment"

---

[3]    The Court need not address each and every one of plaintiff's attempts to twist the discovery record in his favor.  To provide another example, plaintiff argues he timely identified a spreadsheet made by former IBM employee David Trinh, which set forth amounts plaintiff maintains should be disgorged.  (Doc. #336 at 13, 18).  Plaintiff makes this claim without any citation to the record, and in any event, Mr. Trinh's spreadsheet and the amounts therein were not mentioned in plaintiff's 2023 disclosures related to his unjust enrichment claim.  (Doc. #326-1 at 51–53).  At bottom, none of these arguments alters the simple fact that plaintiff failed to timely disclose an amount or computation of unjust enrichment damages.

in his report, he clearly did so in measuring "damages for <u>trade secret misappropriation</u>," which he believed could include "damages for any unjust enrichment <u>caused by the misappropriation of the trade secret</u>." (<u>Id</u>. at 3) (emphasis added). This Court has already ruled plaintiff does not possess a trade secret as a matter of law.[4] (Doc. #305 at 22–38). In addition, Dr. Schwartz's opinions regarding unjust enrichment damages for misappropriation of trade secrets are untenable because they relied on the "head start model," provided by plaintiff's now-excluded expert, David Martin. (Docs. ##336 at 15; 341-5 at 29–30; 305 at 9–21). As such, Dr. Schwartz's report does not salvage plaintiff's unjust enrichment claim from his failure to disclose an amount and computation of damages for that claim.

Plaintiff also cannot rely on the alternative measure of damages calculated by <u>defendants'</u> expert John Jarosz to satisfy his Rule 26 obligations. "[O]ne party's damage theory and calculation cannot be disclosed by the <u>other</u> party during the course of discovery, as Plaintiff would have it. Indeed, the fact that Plaintiff did not amend or supplement his damages disclosure upon receiving the relevant information from Defendants might well have suggested to Defendants that he did not intend to assert a damage theory predicated upon" Jarosz's rebuttal figure. <u>Agence France Presse v. Morel</u>, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

---

[4]    The Court also pauses to note the inconsistency in plaintiff's arguments. Plaintiff argued at the summary judgment stage that his unjust enrichment claim was "separate and distinct" from his trade secrets claims. (Doc. #265 at 20). Plaintiff even asserted this was the case regardless of whether he possessed a cognizable trade secret. (<u>Id</u>. at 23–24). He is now taking the contradictory position that Dr. Schwartz's calculations of trade secret misappropriation damages were the basis for plaintiff's unjust enrichment damages. To be clear, the Court stands by its prior ruling that plaintiff's unjust enrichment claim does not rise and fall with his misappropriation of trade secrets claim, as the claims present distinct theories of liability. (Doc. #305 at 43–44). It is plaintiff's failure to disclose damages for his unjust enrichment claim which now compels dismissal of that claim.

At bottom, the Court finds plaintiff did not comply with his Rule 26 obligation to provide an amount or computation of unjust enrichment damages. Plaintiff failed to initially disclose a computation of unjust enrichment damages. Plaintiff ignored the Court's warnings to that effect, and despite the Court's numerous extensions of the discovery period, he never supplemented his disclosures with an amount or computation of unjust enrichment damages until January 2026, years after the close of discovery.

B.    Preclusion of Plaintiff's Untimely Disclosures is Warranted

Having concluded that plaintiff failed to comply with Rule 26, the Court must next determine the appropriate sanction.

When, as here, a party has not met its discovery obligations, the Court has "wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." Design Strategy, Inc. v. Davis, 469 F.3d at 294. "Pursuant to Rule 37(c)(1), if a party fails to provide Rule 26(a) or (e) information, the party generally is not permitted to use that information at trial unless the failure was substantially justified or is harmless." Agence France Presse v. Morel, 293 F.R.D. at 685. "The burden to prove substantial justification or harmlessness rests with the dilatory party." Am. Stock Exch., LLC v. Mopex Inc., 215 F.R.D. at 93.

For the reasons detailed below, and after consideration of the factors outlined in Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006), the Court finds plaintiff's failure to comply with his Rule 26 obligations was neither substantially justified nor harmless. Accordingly, plaintiff is precluded from introducing at trial his January 2026 damages disclosures, including the theories and evidence identified therein.

        1.      Plaintiff's Explanation for His Failure to Disclose

Although plaintiff asserts his untimely disclosures were "substantially justified," he does not actually offer a justification for his failure to timely disclose a calculation of unjust enrichment damages. Rather, plaintiff largely maintains he complied with his Rule 26 obligations. (Doc. #336 at 17–19).

The Court disagrees.

Plaintiff is correct that a failure to disclose may be substantially justified when "a reasonable person could find that the parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." Lawrence v. Goals Aesthetic and Plastic Surgery, 2024 WL 3742398, at *8 (S.D.N.Y. Aug. 9, 2024). But this is not such a case. No reasonable person could find plaintiff was excused from complying with his disclosure obligations. To the contrary, Judge McCarthy specifically ordered plaintiff to provide defendants with an amount and computation of unjust enrichment damages. (Doc. #62 at Tr. 56–57). Plaintiff simply never did so, and there can be no genuine dispute concerning plaintiff's noncompliance. Plaintiff never disclosed an amount or computation of unjust enrichment damages, and the Court again rejects his attempt to characterize his untimely disclosures as merely summarizing timely disclosed evidence.

The Court also rejects plaintiff's argument that Rule 26(e) required him to make these untimely disclosures. (Doc. #336 at 2). Rule 26(e) requires disclosures to be supplemented in a timely manner—not years after the close of discovery. See Ritchie Risk-Link Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. at 161. This argument underscores the inconsistency in plaintiff's position. If, as plaintiff claims, his January 2026 disclosures merely summarized evidence already disclosed before discovery closed, then his Rule 26(e) duty to

make these supplemental disclosures also arose before discovery closed.[5]   Plaintiff's attempt to justify his untimeliness "under the guise of Rule 26(e) will not be countenanced."  Oceans Cuisine, Ltd. v. Fishery Prods. Intern., Inc., 2006 WL 1071578, at *8 (E.D.N.Y. Apr. 21, 2006).

Plaintiff also highlights that defendants asked no questions about unjust enrichment damages during his deposition.  (Doc. #336 at 10, 14).  To the extent plaintiff means to shift the blame for his own noncompliance to defendants, this attempt will also not be countenanced.  "It is not defendants' responsibility to confirm that plaintiff has taken appropriate measures to ensure the admissibility of evidence central to his own case."  In re Lyman Good Dietary Supplements Litigation, 2020 WL 3414927, at *4 n.8 (S.D.N.Y. June 22, 2020); see also Curcio v. Roosevelt Union Free Sch. Dist., 2012 WL 6641715, at *5 (E.D.N.Y. Dec. 19, 2012) ("Given plaintiff's failure to comply with his disclosure obligations . . . defendant cannot reasonably be expected to have inquired about pension-related damages in its deposition of plaintiff.").

"Although a bad-faith violation of Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply."  Design Strategy Inc. v. Davis, 469 F.3d at 296.  Under the circumstances, the Court finds that plaintiff's untimely disclosures were made in bad faith.  These disclosures were made more than two years after the close of discovery and without leave of Court.  Plaintiff's "failure to provide this particularized information until after the close of fact discovery . . . evidences bad faith."  Scantibodies Laboratory, Inc. v. Church & Dwight Co., Inc., 2016 WL 11271874, at *32.

---

[5]      Plaintiff also provides no explanation as to why he failed to make these untimely disclosures until after the Court-ordered mediation in December 2025, despite the fact that defense counsel highlighted this issue for plaintiff months beforehand.  (Doc. #316 at Tr. 16–17; see also Daniels v. Daemen Univ., 807 F. Supp. 3d 197, 204–05 (W.D.N.Y. 2025) ("The damages computation in particular further enables the defendant to understand the contours of its liability exposure and, by extension, to make informed decisions regarding settlement.").

Further, at the case management conference on July 10, 2025, plaintiff's counsel assured the Court he would not attempt to cram plaintiff's dismissed trade secrets claim into his surviving unjust enrichment claim. (Doc. #316 at Tr. 16). But plaintiff's arguments seeking to repackage his trade secrets disclosures into his unjust enrichment claim do exactly that. Finally, the Court finds additional evidence of bad faith in the fact that plaintiff's second untimely disclosure was made on January 20, 2026, again without leave of the Court, and only one day before the deadline for defendants to file the instant motion to exclude.[6]

Thus, plaintiff has not provided a legitimate explanation for his failure to comply with his Rule 26 obligations, and the Court finds his untimely disclosures were made in bad faith.

###### 2. Importance of the Evidence

Plaintiff argues the Court should not exclude his untimely damages theories because he "would be left without restitution for Defendants' unauthorized and uncompensated use of his IP." (Doc. #336 at 20). Defendants do not dispute the importance of the evidence to plaintiff's case. (Doc. #344 at 8). Indeed, defendants maintain plaintiff's unjust enrichment claim fails without this evidence. (Id.).

The Court acknowledges this evidence is important. But the Court rejects plaintiff's argument that the evidence should not be precluded simply because preclusion would deny him recovery. The importance of this evidence does not excuse plaintiff's "failure to comply with basic discovery rules, particularly when they concern evidence central to his claims." In re Lyman Good Dietary Supplements Litigation, 2020 WL 3414927, at *4; Rienzi & Sons, Inc. v.

---

[6] Plaintiff claims he did not previously disclose the information in his January 20, 2026, disclosure because he "discovered" the relevant documents "shortly before" making that disclosure. (Doc. #336 at 10–11). But, in the same breath, plaintiff acknowledges defendants produced these documents years beforehand. (Id.). The Court does not buy plaintiff's explanation for the discourteous timing of this disclosure.

17

N. Puglisi & F. Industria Paste Alientari S.P.A., 2011 WL 1239867, at *4–5 (E.D.N.Y. Mar. 30, 2011) (excluding a party's damages evidence even though the party could be denied recovery as a result).  To hold otherwise "would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial."  Agence France Presse v. Morel, 293 F.R.D. at 687.

### 3.        Prejudice Suffered by Defendants

Plaintiff argues defendants have not been prejudiced by his untimely disclosures because those disclosures merely "summarize the evidence adduced during discovery regarding unjust enrichment."  (Doc. #336 at 2, 16).  Specifically, plaintiff makes much of the fact that defendants' expert John Jarosz has already rebutted Dr. Schwartz's opinions.  (Id. at 15–16, 18).

The Court again rejects this strained argument.  As detailed above, neither Dr. Schwartz nor Mr. Jarosz opined on damages for plaintiff's unjust enrichment claim.  The similarity between plaintiff's untimely "compensation/restitution" damages theory and Jarosz's rebuttal report does not alter this fact.  Indeed, Jarosz specifically disclaimed this theory, explaining "[n]either Mr. Hayden nor Dr. Schwartz has claimed that this represents the losses of Mr. Hayden here, nor do I believe that to be the case.  It represents an amount that, arguably, IBM avoided investing in its own employees to develop the alleged trade secrets."  (Doc. #349-1 at 7–8).  And again, prior to January 2026, plaintiff had not amended his disclosures to suggest he was pursuing unjust enrichment damages based on Jarosz's estimates.  Had he done so in a timely fashion, defendants would have been able to revisit those figures and conduct further discovery as to whether they were viable as a measure of damages for unjust enrichment as opposed to

18

trade secret misappropriation.[7]  See Agence France Presse v. Morel, 293 F.R.D. at 685.  In short, defendants have not had the opportunity to respond to plaintiff's untimely theories, and discovery would have to be reopened for defendants to do so.  Spontana, Inc. v. Am. Talent Agency, Inc., 2010 WL 3341837, at *2.

Plaintiff's reliance on Cordova v. Comerica Bank, 2011 WL 13592146 (C.D. Cal. July 29, 2011), is thus misplaced.  In Cordova, the court found defendants were not prejudiced by inadequate damages disclosures because defendants had themselves offered detailed damages calculations on multiple occasions.  Id. at *3–4.  Plaintiff argues there is similarly no prejudice here because he has disclosed information sufficient for defendants to calculate his damages, and defendants have done so.  (Doc. #336 at 18–21).  As explained above, defendants here have not yet had the opportunity to respond to plaintiff's untimely damages theories.  And, unlike Cordova, where defendants admitted they could "glean[]" a measure of damages from the "comprehensive" record despite plaintiff's inadequate disclosures, the defendants in this case have repeatedly complained of their inability to measure plaintiff's unjust enrichment damages.  See 2011 WL 13592146 at *4; (Doc. #316 at Tr. 16–17).  Plaintiff's failure in this case was egregious, and the Court is not persuaded by this inapposite and non-binding out-of-circuit authority.

---

[7]    Although the Court need not reach this argument, defendants have argued persuasively that Jarosz's estimate of the amount "IBM avoided investing in its own employees to develop the alleged trade secrets" cannot be a measure of unjust enrichment damages under New York law. (Docs. ##349-1 at 7–8, 326-7 at 5).  Indeed, the New York Court of Appeals has explained that "a plaintiff bringing an unjust enrichment action may not recover as compensatory damages the costs that the defendant avoided due to its unlawful activity."  E.J. Brooks. Co. v. Cambridge Sec. Seals, 31 N.Y.3d 441, 456–57 (2018).  This is because these damages would "not constitute funds held by the defendant at the expense of the plaintiff."  Id.; see also Pauwels v. Bank of N.Y. Mellon Corp., 2025 WL 3063092, at *5 (S.D.N.Y. Oct. 31, 2025).  In any event, the Court need not rule on this issue because plaintiff's untimely damages theories are precluded pursuant to Rule 37(c).

In short, the Court finds defendants "would plainly be prejudiced if they were required to meet any new evidence of damages." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d at 238. This prejudice would be "severe" because discovery would have to be reopened to give defendants the opportunity to properly respond to these untimely calculations. Design Strategy, Inc. v. Davis, 469 F.3d at 297; Spontana, Inc. v. Am. Talent Agency, Inc., 2010 WL 3341837, at *2.

####      4.       Possibility of a Continuance

As to the final factor, the possibility of a continuance, plaintiff asserts a continuance is not required because defendants have already prepared opinions to rebut the evidence and theories in his untimely disclosures. (Doc. #336 at 21). This argument is meritless for the same reasons detailed above.

The closure of discovery in this case more than two and a half years ago weighs strongly against a continuance. See Design Strategy, Inc. v. Davis, 469 F.3d at 297 (weighing the fact that discovery had been closed for approximately one and a half years); Spontana, Inc. v. Am. Talent Agency, Inc., 2010 WL 3341837, at *2 ("[T]he closure of discovery four months ago also weighs strongly against the possibility of a continuance."). And plaintiff had "ample time" to explore these damages theories, as the Court extended discovery a total of 466 days to accommodate him. Downey v. Adloox Inc., 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018).

Plaintiff is correct that a continuance is theoretically possible because a trial date has not yet been set. (Doc. #336 at 19). However, "plaintiff cannot avoid [his] discovery obligations merely by arguing that, because trial is not imminent, defendants would not be prejudiced." Bard v. Bd. of Educ. of City of New York, 2002 WL 188471, at *5 (S.D.N.Y. Feb. 6, 2002). Further, trial in this case "has been delayed only because of this motion" prompted by plaintiff's

untimely disclosures.  Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A., 2011 WL 1239867, at *4.  Thus, plaintiff's untimely disclosures do not justify a continuance in this case, which has been pending for more than five years.  See Morritt v. Stryker Corp., 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011).

After thorough consideration of the above factors, the Court finds plaintiff has not met his burden of showing his failure to timely disclose an amount or computation of unjust enrichment damages was substantially justified or harmless.  Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. at 93.  Although the second Patterson factor—importance of the evidence—favors plaintiff, all the other Patterson factors weigh heavily in favor of exclusion.  See Design Strategy, Inc. v. Davis, 469 F.3d at 296–97.  Plaintiff created the problem he now faces by ignoring his basic discovery obligations and Judge McCarthy's clear order.  The Court will not countenance his bad faith attempt to spring new damages theories on defendants at this late stage.  See Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. at 93.

Accordingly, in an exercise of its discretion under Federal Rule of Civil Procedure 37(c), the Court precludes plaintiff from offering the information contained in his untimely disclosures, including the damages theories and evidence identified therein.

C.    Unjust Enrichment Claim

Defendants argue plaintiff's unjust enrichment claim, in the absence of the damages theories and evidence precluded above, must be dismissed as a matter of law.  (Doc. #325 at 15–16).

The Court agrees.

In light of the preclusion detailed above, plaintiff is without a plausible damages theory and cannot offer any evidence from which a reasonable jury could find he suffered any damages.

21

(Doc. #325 at 15–16); see also Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 331 F. Supp. 3d at 238–39 (excluding damages evidence under Rule 37(c) and dismissing claims which failed for lack of damages evidence).  Plaintiff does not meaningfully dispute this conclusion.  Plaintiff instead contends, without citation, that even absent evidence of damages, he should be allowed to proceed on his unjust enrichment claim to pursue injunctive relief.  (Doc. #336 at 21).

The Court is not persuaded.

First, the Court notes it is unclear whether plaintiff sought this injunctive relief in connection with his unjust enrichment claim.  In the First Amended Complaint, plaintiff's prayer for relief included "[a]n injunction against any further exploitation, misappropriation, or disclosure of plaintiff's trade secrets, intellectual property, or ideas."  (Doc. #4 at 50) (emphasis added).  This same claim for relief was asserted in plaintiff's 2023 disclosures, but again in the context of misappropriation of trade secrets.  (Doc. #326-1 at 18).  None of plaintiff's disclosures regarding unjust enrichment—including his untimely 2026 disclosures—raised the remedy of injunctive relief in connection with that claim.  (Doc. #326-7).

In any event, plaintiff has identified no authority—nor is the Court aware of any—to support his position.  (Doc. #336 at 21).  To the contrary, "[u]njust enrichment is an equitable claim for money."  Broker Genius, Inc. v. Volpone, 313 F. Supp. 3d 484, 497 (S.D.N.Y. 2018).  Accordingly, "the appropriate remedy for unjust enrichment is restitution."  Caro Cap., LLC v. Koch, 653 F. Supp. 3d 108, 133 (S.D.N.Y. 2023); Giordano v. Thompson, 564 F.3d 163, 170 (2d Cir. 2009) ("Recovery on such a claim is limited to the reasonable value of the services rendered by the plaintiff.").  Further, to prevail on a claim for unjust enrichment "plaintiff must present sufficient evidence to measure the defendant's unjust gain."  Caro Cap., LLC v. Koch, 653 F. Supp. 3d at 133–34.  Plaintiff thus "has the burden to demonstrate not only that a benefit was

22

conferred upon the defendants, but also that the defendants should have to compensate plaintiff for the benefit conferred." Schatzki v. Weiser Cap. Mgmt., LLC, 995 F. Supp. 2d 251, 252–53 (S.D.N.Y. 2014).

Plaintiff has done nothing to explain how he can carry this burden without the precluded evidence. (Doc. #336 at 21–22). Indeed, in the absence of the precluded evidence, there is no evidence from which defendants' allegedly unjust gain could be determined. Accordingly, plaintiff's unjust enrichment claim must be dismissed. See Balestriere PLLC v. CMA Trading, Inc., 2014 WL 929813, at *15 (S.D.N.Y. Mar. 7, 2014) (dismissing unjust enrichment claim as a matter of law in the absence of proof of the value of services rendered by plaintiff); Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) (rejecting unjust enrichment claim after bench trial because plaintiff failed to provide evidence from which a measure of defendants' unjust gain could be calculated).

Because the Court has dismissed plaintiff's unjust enrichment claim, it need not reach defendants' arguments regarding bifurcation of this claim from plaintiff's retaliatory discharge claim.

## CONCLUSION

Defendants' motion is GRANTED IN PART and DENIED IN PART.

Defendants' motion to exclude plaintiff's untimely disclosures, including the theories and evidence identified therein, is GRANTED. Defendants' motion to bifurcate is DENIED as moot.

Plaintiff's claim for unjust enrichment is dismissed. Plaintiff's claim for retaliatory discharge is unresolved and remains pending.

The Clerk is instructed to terminate the motion. (Doc. #324).

23

The Court will conduct a case management conference on June 11, 2026, at 2:30 p.m., to be held at the White Plains Courthouse, Courtroom 620, at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will continue to make to settle this case. To be clear, counsel are directed to discuss settlement in good faith prior to that date.

Dated: May 8, 2026
       White Plains, NY

                            SO ORDERED:

                            _____
                            Vincent L. Briccetti
                            United States District Judge

24